Davis v. Petty.

---

Davis et al., Appellants, v. Petty.

Division One, December 23, 1898.

1. **Contracts:** WITHOUT CONSIDERATION. An agreement, in writing and under seal, by the owner of land, granting an option to purchase the same for a certain price, will not be enforced, where the agreement for such option is without any consideration to support it.

2. ———: MUTUALITY. A contract stipulating that one party is to have certain land whenever he elects to pay $640 therefor, and is to pay nothing unless he so elects, is not enforcible because there is no mutuality of right and remedy.

3. ———: SPECIFIC PERFORMANCE: DISCRETIONARY. Specific performance of a contract is not a matter of absolute right, but rests in the sound discretion of the chancellor, and the granting or refusal of such relief must depend on the facts and circumstances of each case. And these being reviewed herein, it is *held*, that plaintiffs were not entitled to specific performance.

Davis v. Petty.

4. ——— : ——— : LACHES. Although an agreement for the convey-
ance of land on demand of the purchaser, contemplated a delay
before such demand was to be made, yet such party will be charged
with laches if he stood by for a number of years and saw the other
make lasting and valuable improvements without objecting, and by
his conduct led the other party to believe that he had abandoned all
claim under such contract.

5. ——— : ——— : ——— : STALE CLAIMS. Courts of equity do not
lend a willing ear to stale claims, or countenance laches in one
seeking specific performance.

*Appeal from Lawrence Circuit Court.*—HON. J. C. LAMSON,
Judge.

AFFIRMED.

WM. B. SKINNER and HENRY BRUMBACK for appellants.

(1) The contract upon its face narrates the relations
and the purposes of the parties, and discloses its own special
reasons why the plaintiffs are entitled to specific perform-
ance, upon their having invested their money and their exer-
tions in the enterprise in which they united with the defend-
ant. The contract was more than an ordinary agreement to
sell land by the defendant; he was selling at an advanced
price the first parcel, and, at the same time, drawing to him-
self men and means with the express purpose of enhancing
his one-fifth of the first and of the second parcels, and of his
remaining forty acres adjoining them. Now that he has
availed himself of the capital and the efforts of plaintiffs
that have resulted in enhancing the values of his remaining
lands, it would be inequitable to allow him to reap the entire
growth to the exclusion of his associates. The contract was
fair and reasonable, and liberal toward defendant, made
upon adequate consideration, is certain in its terms, and was
evidently fully and correctly understood at the time by the

defendant. Glass v. Rowe, 103 Mo. 535; Ostrander v. Weber, 114 N. Y. 95; Hollister v. Stewart, 111 N. Y. 659; Baumann v. Pinckney, 23 N. E. Rep. 918; Crary v. Smith, 2 N. Y. 62; 22 Am. and Eng. Ency. of Law, 913, 915 and 941. (2) The contract is not without consideration. It is a proposition extending through such a period as was needful to the consummation of the plan of marketing town lots and "being under seal must be regarded as made upon a sufficient consideration, and, therefore, one from which defendant was not at liberty to recede." Willard v. Taylor, 8 Wall. 557; O'Brein v. Boland, 44 N. E. Rep. 602. (3) There is mutuality in the contract. It is executed by appellants as well as respondent, and binds them to pay a certain sum for the real estate in controversy. The only possible point open to question lies in the fact that the time of performance is left optional with appellants. Of this difficulty, if it be one, it laid within the power of respondent to relieve himself, if he chose to want performance or to terminate his obligation, by tendering his deed and demanding performance within some reasonable, designated time. Having failed to do this, he can not complain that appellants did not choose sooner to demand performance. Pomeroy on Spec. Perf., sec. 395; Waterman on Spec. Perf., sec. 465; Mastin v. Grimes, 88 Mo. 484; Warren v. Castello, 109 Mo. 343; In re Ferguson's Estate, 124 Mo. 584. (4) Respondent is understood to contend that the property has increased in value, and hence performance is unjust. Some increase was anticipated by the parties. If the actual increase has exceeded the estimate then made, that circumstance furnishes no ground for the interference with the arrangement of the parties. The question in such cases always is, was the contract, at the time it was made, a reasonable and fair one? If such were the case, the parties are considered as having taken upon themselves the risk of subsequent fluctuations in the value of the property, and such

fluctuations are not allowed to prevent its specific performance." Willard v. Taylor, 8 Wall. 557.

W. CLOUD for respondent.

(1)   The rule of performance is based upon the evident intention of the parties and gives a reasonable construction to all contracts.   Lafayette Building Ass'n v. Kleinhoffer, 40 Mo. 388; Belch v. Miller, 32 Mo. App. 387; Hall v. School District, 24 Mo. App. 213.   (2)   The conduct of the defendant, subsequent to the signing of the option, is evidence concerning his state of mind at the time.   Believing all the time that he had simply given the plaintiffs a refusal of the property, which he might retract at any time, and afterward did so informally, he set about improving his home, adding such comforts as were essential, and expending in this manner more than he was to receive for the property. In this idea he was encouraged by the silence of the plaintiffs.   Isaacs v. Skrainka, 95 Mo. 523; Dunn v. White, 63 Mo. 181; McElroy v. Maxwell, 101 Mo. 294; Fry on Spec. Perf., sec. 432; Frisby v. Ballance, 4 Scammon, 287. (3)   The agreement is a naked option.   The amount paid for the adjoining twenty acres was a fair price, and the transaction was fully consummated.   The option is wholly independent of the other trade, and no consideration whatever was given for the promise.   Such an agreement can not be enforced.   Ring v. Kelly, 10 Mo. App. 411; Bean v. Burbank, 16 Me. 458; Anderson v. Green, 7 J. J. Marshall, 448; 1 Pomeroy, Eq. Jur., sec. 383.   (3)   Mutuality of obligation and remedy are wanting.   The defendant alone is bound to the will of the plaintiffs in this case, and such an offer may be retracted at any time prior to its acceptance. Waterman on Spec. Perf., sec 196; Glass v. Rowe, 103 Mo. 513; Eskridge v. Glover, 5 Stewart and Porter, 264.

WILLIAMS, J.—This is a suit for specific performance. The agreement, which forms the basis of the action is contained in the following paper:

"This agreement, made and entered into this August 4, 1888, by and between William I. Petty, John D. Porter, Jackson B. Davis, William E. Wright and Henry Brumback, witnesseth:

"Whereas, said Petty is now the owner in fee of the following described real estate, situate in Lawrence county, Missouri, viz., the southwest quarter of the southwest quarter of section twenty-five in Township twenty-eight of range twenty-eight containing forty acres, more or less, and all the parties above named contemplate and design to locate and lay out a town upon the said real estate. Now it is agreed that simultaneously with the execution hereof, said Petty, in consideration of six hundred and forty dollars, shall convey to said Porter, Davis, Wright and Brumback by warranty deed with release of dower, the equal undivided four-fifths part of the west half of said forty acre tract of land; *and that whenever said Davis, Porter, Wright and Brumback, their heirs, executors, administrators or assigns, shall desire and shall demand of him then the said Petty, in consideration of six hundred and forty dollars more to be then to him paid, shall by good and sufficient warranty deed, with release of dower, convey to said Davis, Porter, Wright, and Brumback the equal undivided four-fifths part of the east half of said forty acre tract of land.*

"And said Porter, Davis, Wright and Brumback agree to pay to said Petty, upon the execution hereof, said sum of six hundred and forty dollars for said part of said west half, and, *whenever they shall make of said Petty the demand aforesaid for said part of said east half, to pay him then therefor the further sum of six hundred and forty dollars, each an equal part.*

"And the said five parties so mutually agree that they shall at once lay out and plat said west half into town lots, and place them upon the market for sale, in such manner, and upon such terms as shall seem expedient. If deemed advisable they shall appoint an attorney in fact to execute conveyances, and, if deemed better by a majority, they shall incorporate for the purposes herein named. Each party shall bear an equal one-fifth part of all expenses incident to the enterprise, and share an equal one-fifth part of the net profits.

"*When, if at all, deemed marketable to advantage they shall lay out and plat into town lots the said east half, and place them upon the market, the parties having become first equal owners thereof by purchase and conveyance as aforesaid of said Petty.*

"Witness the hands and seals of the parties.

"(Signed)   WILLIAM I. PETTY,   .   [Seal]
            "J. B. DAVIS, ·          [Seal]
            "W. E. WRIGHT,           [Seal]
            "HENRY BRUMBACK,         [Seal]
            ."JOHN D. PORTER,        [Seal]"

A deed was made by Petty and wife, on the same day upon which the contract was executed, conveying to the parties named above, four-fifths of the *west* half of the forty acres described in said writing. Defendant testified that said deed was made about one hour before he signed the contract above set out. Plantiffs' testimony goes to show, upon the contrary, that the deed and contract were executed at the same time.

Porter, one of the contracting parties, assigned his interest to Wm. A. McCanse, who joins as plaintiff herein.

A decree enforcing the agreement as to the *east* half is the relief sought in this case. The parts of the written contract applicable thereto are in italics.

There is no controversy here about the west half of the tract of land. After the conveyance by Petty, it was divided into lots, a plat filed on September 14, 1888, and said lots offered for sale.

Defendant, in August, 1888, was the owner of the forty acres of land above described, and the same together with a tract containing a similar quantity lying east of it, constituted his homestead. He was a farmer, nearly seventy years of age, and had lived there a long time.

There were two mining plants on the land adjoining his on the west. Several of the plaintiffs visited him at his home on the third of August, 1888, and tried to buy the entire forty acres. He declined to sell at all, but did agree to convey to them four-fifths interest in the *west* twenty. There seems to be a difference of opinion as to whether any arrangement was made *at that time* concerning the disposition of the other half of the tract. His house and improvements were on the east twenty, over which this litigation arises. Plaintiff went to town the next day, by appointment, and executed the deed to the west half, received the consideration therefor, $640, and signed the agreement hereinbefore set out concerning the twenty acres involved in this dispute.

The *west* twenty acres were at once laid off into ninety town lots and the plat filed on the fourteenth of September, 1888, as stated above. Although these lots were offered for sale, there seems to have been very little demand for them for several years. The speculation did not give any promise of success and the outlook, for a number of years, for any profit from the investment does not seem to have been bright. There was nothing to indicate that there would be any necessity for extending the limits of the town. Its original boundaries were apparently more than sufficient for all purposes. It did not appear at all probable that the land in controversy would be needed for town purposes. There

was very little sale for the lots for more than five years. The first distribution of funds arising from the proceeds of the same was on April 8, 1893, and amounted only to $40 to each of the five joint owners, and the next was on January 22, 1895, of $184.44 each. The outlook was such that Mr. Brumback, one of the plaintiffs, quite awhile after the town was laid off, proposed to sell his share to defendant for his original investment, without interest.

Porter, one of the parties, said that the lots did not sell as rapidly as expected; that up to April, 1890, he thought they only sold enough to bring $35.

None of the plaintiffs at any time from 1888 to 1893, ever mentioned to defendant the contract concerning the east twenty acres. They gave no intimation to him that they intended or ever expected to call upon him for a conveyance of the land in controversy in order that they might add it to the town site.

Defendant in the fall of 1893, or some time in that year (the date is not definitely fixed) said to plaintiff Wright, according to the latter's testimony, "You fellows will have to let me off from that contract, my wife refuses to make a deed." Wright says, "I did not say anything in reply; kept my mouth shut; *thought the less said the best.*"

Mr. Brumback says that about eighteen months or two years before the trial, which was in August, 1895, defendant came to his office and this conversation took place: "You fellows are not going to hold me to that contract, are you?" and witness replied, "I *suppose* we will hold you." This must have been between August, 1893, and January, 1894, as we gather it from the evidence.

During the five years intervening between the signing of the agreement and the year 1893, no mention was made of the contract to defendant. He in the meantime made valuable and lasting improvements upon his property. He built an addition to his house in the fall or winter of 1888. He added

another part in the spring of 1894, and he also put up a barn. These improvements amounted to $700 or $800. Several of the plaintiffs, if not all of them, knew that this work was being done and the value of the property, upon which they claim this option, was being greatly increased thereby. Yet they said nothing.

There was a rapid increase in the value of property in that vicinity in the closing days of 1894, and the beginning of 1895. Mining interests were increased and the price of land advanced. One witness says that in December lots were selling pretty fast, and that there seemed to be quite a "boom."

Plaintiffs on the twenty-second of December, 1894, tendered defendant $640, in gold, and made a written demand for a deed under the agreement of August 4, 1888. Defendant refused to make the deed, and this suit was brought on the fourth of January, 1895.

The circuit court dismissed the bill, and the case has been brought here by plaintiffs.

I.   The agreement, which plaintiffs seek to have specifically enforced, seems to us to be without any consideration to support it. Plaintiffs did not bind themselves to purchase the land, and were not obliged by the terms of the writing signed by the parties, so to do. If, at any time in the future, they *elected* to buy, they were to pay the sum of $640. If they did *not* so elect, they were to pay *nothing*.

An option was simply given them to purchase the property or an interest therein at a stipulated price. What was the consideration for this privilege? No money was paid for it. It certainly does not appear from the writing that any greater amount was given for the interest in the *west* twenty acres on account of the agreement concerning the *east* twenty. Nor is it apparent therefrom, that the former would not have been purchased without the option upon the latter.

They are not made dependent, the one upon the other. The defendant testified that the deed was delivered and the consideration paid for the *west* half before this contract was signed. However that may be, it certainly does not appear that plaintiffs required the option in consideration of their purchasing the interest in the other land; or that they gave any more for said other land on that account.

It was held in Litz v. Goosling, 21 L. R. A. 132: "If the contract for an option to purchase real estate at a certain price within a certain time be based upon a sufficient consideration, which may consist, of course, either in an advantage moving to the one party or a disadvantage to the other, then it is enforcible; but where a mere naked option, destitute of consideration is given to one, it is not enforcible because there is no mutuality of right and remedy."

"Contracts which are voluntary, or where there is no consideration on the part of him who seeks performance will not be specifically enforced, although under seal, whether the contract be in the form of an agreement, a covenant or a settlement." [Waterman on Spec. Perf., sec. 186; Fry on Spec. Perf. (3 Am. Ed.), sec. 92.]

II. Specific performance of a contract is not a matter of absolute right. It rests in the sound judicial discretion of the chancellor, and the granting or refusal of such relief must depend upon the facts and circumstances of each particular case.

SHERWOOD, J., in a recent and very able opinion, uses this language, which is peculiarly pertinent to the case now in hand:

"And while it is true that the exercise of jurisdiction by a court of equity to compel specific performance is discretionary, and not a matter of absolute right even where the given contract exhibits all the tokens and insignia of mutuality, *a fortiori* is it true as to an option or unilateral contract (so called) where the vendor is bound by a cable, and

the vendee by not so much as a silken thread." [Holmann v. Conlon, 143 Mo. loc. cit. 378.] This quotation from Fry on Specific Performance (3 Am. Ed.), section 1073, is then approved: "Where the contract is in anywise unilateral, as, for instance, in the case of an option to purchase, a right of renewal, or of any other condition in favor of one party and not of the other, then any delay in the party in whose favor the contract is binding is looked at with especial strictness."

The agreement in this case was made on the fourth of August, 1888. The west twenty acres were at once subdivided into lots, and those lots placed upon the market. It is true that it is apparent from the contract, that a delay was contemplated by the parties before plaintiffs should be compelled to exercise the option given to purchase an interest in the remainder of the tract, and lay it off, if deemed advisable, as an addition to the town. But we do not think that the time was to be without limit, and defendant and his heirs forever bound; or that a court of equity is called upon to decree the performance of the agreement, regardless of the lapse of years or the changed condition of the property.

The town which the parties had established did not seem to thrive. The sale of lots was small. The interest in it apparently began to wane. Instead of there being any indication of a purpose to call for a conveyance of *additional* land, one of the plaintiffs offered to sell his interest in the investment already made, for the return of his actual outlay, without interest. This condition of affairs continued for five years or about that length of time. There was every reason to lead defendant to believe that plaintiffs had abandoned any intention or desire to demand a conveyance from him of his homestead, or rather of an interest in the same. He had, in the meantime, made improvements upon his property exceeding the sum which plaintiffs were to pay him. They or some of them saw this going on but remained silent. We think the fair inference to be drawn from the

conduct of the parties is that during the five years succeed-
ing the organization of the town, the sale of lots had not
come up to their expectations, and the option was practically
treated by all as abandoned.

This explains the acts of plaintiffs consistently with
good faith upon their part, and those of defendant in improv-
ing his homestead, and investing his money there, as in
accord with common business prudence.

The property began to enhance in value about the close
of 1894, and then, more than six years after the option to
purchase was given, plaintiffs for the first time tendered the
money and demanded a deed.

The long delay amounted to laches upon plaintiffs' part,
and the increase in the value of the land in the meanwhile,
caused in part at least by defendant's money and labor ex-
pended thereon, we think should preclude a court of equity
from enforcing this one-sided agreement.

It is true, as suggested by appellant, that defendant
might have relieved himself of all obligations under the
contract by tendering a deed and demanding an acceptance
within a reasonable time thereafter.    [Mastin v. Grimes, 88
Mo. 488.]   A court of equity, however, is not bound to
specifically enforce the agreement, regardless of the situa-
tion of the parties, and the hardship  such a decree may
unjustly entail, simply because this was not done.

Courts of equity do not lend a willing ear to stale
claims, or countenance *laches* in one seeking specific per-
formance.   This court, through GANTT, P. J., declared in
Brown v. Massey, 138 Mo. loc. cit. 532: "A decree for
specific performance of a contract for the sale of real estate
does not go as a matter of course because there is a binding
legal contract between the parties, but it is granted or with-
held according as the equity of the case, in view of all the
facts, demands.   In a country like ours and about the time

this agreement was made, when values were fluctuating and speculation was rife, it would be most inequitable to permit parties to lie by and speculate on their own contracts."

In Green v. Covillaud, 10 Cal. 317, this rule was declared: "While time is not of the essence of the contract for the sale of lands, ordinarily, yet in every case it will devolve upon the party seeking the relief to account for his delay, and if there are circumstances showing culpable negligence on his part *or if the length of time which has been permitted to intervene, together with other circumstances, raise the presumption of an abandonment of the contract,* or if the property has greatly enhanced in value in the meantime, and the purchaser has laid by apparently for the purpose of taking advantage of this circumstance, he would not be entitled to a decree in his favor."

"A party can not call upon a court of equity for specific performance, *unless he has shown himself ready, desirous, prompt and eager."* [Fry on Spec. Perf. (3 Am. Ed.), sec. 1072; Waterman on Spec. Perf., sec. 469; Hollmann v. Conlon, 143 Mo. 369; Brink v. Steadman, 70 Ill. 241; Estes v. Furlong, 59 Ill. 298.]

We are convinced, after an examination of all the evidence, that under the facts of this case, the circuit court properly refused a decree for specific performance and its judgment is affirmed.   All concur.