KIRBY-CARPENTER CO. v. BURNETT.

(Circuit Court of Appeals, Fifth Circuit. March 20, 1906. Rehearing Denied April 6, 1906.)

No. 1,489.

1. VENDOR AND PURCHASER—CONSTRUCTION—WHAT LAW GOVERNS.

An option to sell land located in Louisiana, performed in that state, is governed by the Louisiana laws.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, § 78.]

2. SAME—OPTIONS—NUDUM PACTUM.

Civ. Code La. art. 1893, provides that an obligation without a cause can have no effect, and article 1896 defines the word "cause" as the consideration or motive for a contract. *Held*, that a gratuitous option, by which the grantor agreed, until a certain date, to sell certain land to plaintiff for a specified price, was a mere nudum pactum, and insufficient to sustain an action for breach both under such sections and at common law.

3. SAME—OFFER AND ACCEPTANCE—TIME—STATUTES.

Civ. Code La. art. 1802, provides that the party proposing is bound by his proposition, and that the signification of his dissent will be of no avail, if the proposition be made in terms which evince a design to give the other party the right of concluding the contract by his assent. *Held*, that such section had no application to an option for the sale of land, which provided that the terms of sale were to be afterwards agreed on, and to be satisfactory to the seller.

In Error to the Circuit Court of the United States for the Western District of Louisiana.

This is an action to recover damages for the breach of a contract brought by John Burnett, plaintiff, a citizen of Louisiana, against the Kirby-Carpenter Company, defendant, a corporation chartered under the laws of the state of Illinois. The contract is copied in the petition, and is as follows:

"Menominee, Mich., January 31st, 1902.

"John Burnett, Lake Charles, La.—Dear Sir: We hereby give you an option until March 1st, 1902, to buy the lands owned by the Kirby-Carpenter Company, in the Parish of Calcasieu, state of Louisiana, amounting in all to

20,808.46 acres, at the sum of $20.00 per acre, net to us, terms to be afterwards agreed on and to be satisfactory to us. On the above terms the option shall be in force not longer than March 1st, 1902, and you shall notify us sooner if it can well be done, whether you will take the lands on above option or not.

"Yours truly,                       The Kirby-Carpenter Co.

"S. P. Gibbs, Secretary."

It is alleged that, after receiving the option, the plaintiff found a purchaser, ready, willing, and able to purchase the lands at the price of $436,-977.66, and that the sale failed, by reason of the fault of the defendant company; it being unable to make a good title to the purchaser. It is alleged that the defendant company endeavored to avoid closing the sale, and that it offered "the sum of $10,000" to the intended purchaser "to not insist upon the transfer of the property; that said Adams [the purchaser] was exercising the right to buy under said option, and refused to waive his right to purchase the property." After stating the objections to the defendant's title, which, it is alleged, prevented the sale, it is averred "that the conduct of said company and its refusal to carry out its undertaking with petitioner has actually damaged him in the sum aforesaid, $20,000, for loss of profits sustained by reason of its breach of contract herein declared upon." The defendant answered, admitting "the execution of the written option or agreement to sell to plaintiff, * * * but avers that said option was given without consideration or mutuality of obligation, and is nudum pactum and not legally binding on this defendant." Other defenses were pleaded in the alternative, which it is unnecessary to state. The case, by agreement entered of record, was tried before the court; a jury being waived. The court found as a fact that the contract sued on was executed by the defendant company on the day of its date, and delivered to the plaintiff. The court found as conclusions of law "that the option contract sued upon is a legal contract binding on the parties thereto," and "that the breach of this contract is actionable at law." After stating other findings of fact and conclusions of law, not material to be stated, the court rendered judgment for plaintiff against the defendant for $20,808.46, with interest from March 15, 1902, until paid. The defendant company sued out this writ of error, and assigns that the court erred: (1) In failing to hold that the contract sued on was void for want of mutuality of obligation in the contract; and (2) in rendering judgment against the defendant.

F. G. Hudson (Hudson, Potts & Bernstein, on the brief), for plaintiff in error.

A. P. Pujo and C. D. Moss, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The alleged contract which is the basis of this action is an option given by the plaintiff in error to the defendant in error. It gives the latter an option to buy certain lands at a certain price within a fixed time. It does not purport to bind the person to whom it is given He paid nothing for it and makes no reciprocal promise. It contains no words that import any kind of consideration. A valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. While the writing in question here contains a promise on the part of the Kirby-Carpenter Company, we search in vain to find any element of consideration proceeding from Burnett, or any one, to the company. He makes no promise, is subjected to no detriment; nor

does he give any benefit or advantage to the company. A promise or agreement made without a consideration, however strong and clear may be the terms in which it is made, is not enforced by courts, nor can a breach of it be the predicate for the assessment of damages. This rule is elementary in English courts and in American courts, where the principles of the common law are administered. Wald's Pollock on Contracts (3d Ed.) 185. The principle that a promise is invalid if not supported by a consideration is as applicable to options as it is to other contracts. Borst v. Simpson, 90 Ala. 373, 7 South. 814; Peacock v. Deweese, 73 Ga. 570; Davis v. Petty, 147 Mo. 374, 48 S. W. 944; Crandall v. Willig, 166 Ill. 233, 46 N. E. 755; Faulkner v. Hebard, 26 Vt. 452; Walker v. Bamberger, 17 Utah, 239, 54 Pac. 108; Graybill v. Brugh, 89 Va. 895, 17 S. E. 558, 21 L. R. A. 133, 37 Am. St. Rep. 894; Ide v. Leiser, 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17; Bean v. Burbank, 16 Me. 458, 33 Am. Dec. 681; Burnet v. Bisco, 4 Johns. (N. Y.) 235.

In Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145, the Supreme Court had occasion to comment on the nature of an option that was unilateral in its terms. Hardwick made a written agreement with Richardson, whereby the former agreed that the latter might become equally interested in certain lands by paying certain sums within a certain time. Both signed the agreement, but it recited no consideration proceeding from Richardson, and it contained no promise that he would buy the interest in the lands. It was optional with him to take the interest in the lands or not, as he chose. He was left free, and he had paid nothing, and promised nothing. The court held that:

"It is clear from the terms of the contract that Richardson was not bound by it. He did not agree to purchase any share in the lands or to pay Hardwick any money. The contract gave Hardwick no cause of action against Richardson. The latter was not bound to become interested in the lands, or to pay any money thereon, unless he chose to do so. In suits upon unilateral contracts, it is only where the defendant has had the benefit of the consideration for which he bargained that he can be held bound."

It is unquestionable that, according to the principles of the common law, the option, for a breach of which this suit was brought, is not a binding contract, and that neither the Kirby-Carpenter Company nor Burnett could maintain an action for damages for the breach of it by the other; nor could either enforce it in any way against the other.

But the agreement in question was made to be performed in Louisiana, and it was conceded in the argument at the bar that it is to be governed by the laws of that state.

It has been suggested by the Supreme Court of Louisiana, in Landèche v. Sarpy, 37 La. Ann. 835, that the French commentators and courts are divided on the question as to whether, under the civil law as administered in France since the adoption of the French Code, a unilateral promise to sell, without a reciprocal promise to buy, is binding on the promisor. It would be useless for us to enter on the investigation and discussion of that question, because it would be entirely academic, as the question in the case at bar relates to the validity of a contract under the statutes of Louisiana existing at the

time the contract was made, as construed by the Supreme Court of that state.

Article 1893 of the Louisiana Civil Code provides that "an obligation without a cause, or with a false or unlawful cause, can have no effect." In article 1896 of the Civil Code, we find a definition of the the word "cause," as used in article 1893: "By the cause of the contract, in this section, is meant the consideration or motive for making it. * * * " "The word 'cause' as here used," said the court in Chaffe v. Scheen, 34 La. Ann. 684, 688, "and almost universally by civilians, is synonymous with 'consideration';" and in the same opinion it was said, "there must be such a consideration in all valid contracts." In Mouton v. Noble, 1 La. Ann. 192, 193, the court said:

"When an engagement has no cause, or consideration, or, what is the same thing, where the cause for which it is contracted is false, the engagement is null, and the contract based on it is also null, and cannot be enforced by an action. Money paid under such an agreement can be recovered back by the action condictio sine causa. The civilians use the term 'cause,' in relation to obligations, in the same sense that the word 'consideration,' is used in the jurisprudence of England and the United States."

In Taylor v. Wooten, 19 La. 518, it was held that a promise by defendant to send plaintiffs his crop, or, in default, to allow them a commission on its amount, having no other consideration than the acceptance of a draft, for which a commission is already charged and allowed, is a nudum pactum, and will not be enforced. In Broaddus v. Nolley, 25 La. Ann. 184, it was held that a certain promise was not binding "because an agreement without consideration is not obligatory."

In Huie v. Bailey, 16 La. 213, 218, 35 Am. Dec. 214, the court said:

"To make any agreement for indulgence obligatory, it must be for an adequate consideration. The old opinion was that any agreement to give time discharged the drawer and indorsers, whether without consideration or not; but the latter doctrine is: A delay without sufficient consideration, and without taking any new security, being a nudum pactum, will not discharge other parties, if the holder has not entered into such an agreement as will disable him from suing the acceptor."

By article 2462 it is enacted that "a promise to sell amounts to a sale, when there exists a reciprocal consent of both parties as to the thing and the price thereof. * * * " In Peck v. Bemiss, 10 La. Ann. 160, the contract to sell was reciprocal, one party agreeing to sell and the other to buy, and it was held valid without question. The case of Campbell v. Lambert & Co., 36 La. Ann. 35, 51 Am. Rep. 1, involved the question of the validity of an agreement where there was no mutuality of engagement. Lambert & Co. agreed to deliver coal to Campbell during the year 1879 in such quantities as he might require, "with the privilege of 20,000 barrels or more." The contract contained no obligation on the part of Campbell to take any coal. It left him free to take it or not. The court held the agreement a nudum pactum, quoting and approving common-law authorities on the subject of the necessity of a consideration to support a contract. The court said:

# KIRBY-CARPENTER CO. V. BURNETT. 639

"One promise may be a good consideration for another promise, but not 'unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement.' 1 Parsons' Cont. p. 418. Thus it has been held that a written agreement to give A. the refusal of the lease of a farm at stipulated rent, with no agreement on the part of A. to take it, and no other consideration, is void. Burnet v. Bisco, 4 Johns. (N. Y.) 235. So, a contract in writing to convey lands, at a fixed price, and within a stated time, where the other party did not bind himself to take and nothing was paid or agreed to be paid by him, was held void. Bean v. Burbank, 16 Me. 458, 33 Am. Dec. 681. Again, where the purchaser at an executive sale gave the defendant a written promise to reconvey upon the payment of a specified sum by a day named, but the defendant did not bind himself to make such payment, the promise was held to be without consideration. Mers v. Franklin Ins. Co., 68 Mo. 127. The following case is yet more exactly in point, viz.: It was held that a written agreement under which one party was to deliver to the other prairie hay 'not to exceed two hundred tons,' payment to be made on delivery of designated installments, did not confer upon the latter party a right to enforce delivery to the limit mentioned, was therefore without complete mutuality, and left it optional with each party to avoid the agreement, on giving notice to the other, at any period during the time of delivery. Houston & T. C. Ry. Co. v. Mitchell, 38 Tex. 85. If the condition upon which defendants' promise was to take effect had been the doing of something involving labor or other value by Campbell, and, upon the faith of said promise and before its revocation, Campbell had done the thing, different principles would apply, not necessary to specify here. But the foregoing cases sufficiently show that the mere exercise of an option to exact the performance of a promise does not alter the situation of the parties and does not prevent the promisor from exercising his right of refusal. The authorities quoted are sound and applicable to our law. On these grounds we hold that defendants were not bound in law to execute the naked promise contained in their agreement, but had the right, at any time, to refuse to proceed in execution thereof, and for such refusal are not responsible in damages to plaintiff."

In Landèche v. Sarpy, the court had occasion to again refer to this subject. "It is conceded," said the court, "that a promise to sell without a reciprocal promise to buy might be valid under the civil law; but the question is whether article 2462 of our Code and 1589 of the French Code has not changed the prior law in this respect.   *   *   *" It is true that the court does not express an opinion as to the effect of the Code on the former law, but we do not understand that anything is withdrawn that was said in Campbell v. Lambert & Co., supra.  Our attention has not been called to any later decision of the Supreme Court of Louisiana on this subject.

In our opinion, the contract sued on was not binding on the plaintiff in error, and it had the right to withdraw from it, and therefore the defendant in error was not entitled to recover damages for a breach of it.  This conclusion, we think, is not only sustained by the jurisprudence of Louisiana, as announced by the Supreme Court of that state, but also by the general jurisprudence of this country.

Our attention has been called to article 1802 of the Civil Code relating to time given for acceptance of a proposition.  If it be conceded that this article applies to offers to sell, we do not think it applicable to the instant case, because the proposition was not so definite in terms that its mere acceptance would have constituted a contract.  It left matters open for further negotiation; "Terms to be

afterwards agreed on and to be satisfactory to us." The proposal was not "made in terms which evince a design to give the other party the right of concluding the contract by his assent." Something more than his assent was required before the minds of the parties would meet and the contract be complete.

In an alternative defense to the action, the plaintiff in error contended that it had in fact made no breach of the alleged contract, and this defense, we think, was also well made, and would necessitate a reversal of the judgment. But, as the view we take of the validity of the contract sued on is conclusive of the case, it is useless to make a further statement of our views as to the alternative contention.

The judgment of the Circuit Court is reversed, and the cause remanded, with instructions to enter a judgment for the plaintiff in error, the defendant in the trial court.