**SUNRAY OIL COMPANY, Plaintiff-Respondent,**

v.

**Lawrence E. LEWIS and Ethel I. Lewis, Defendant-Appellants.**

**No. 25014.**

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1968.

Rufus Burrus, Independence, for defendant-appellants.

Robert I. Donnellan, Clayton R. Smalley, Watson, Ess, Marshall & Enggas, Kansas City, for plaintiff-respondent.

SPERRY, Commissioner.

This case was transferred to us by the Supreme Court. See Sunray D X Oil Co. v. Lewis, Mo., 426 S.W.2d 44.

Plaintiff filed a petition praying for judgment declaring that plaintiff had a valid option to lease from defendants certain described real estate, on stated terms, to be used by it as a gasoline service station; that plaintiff legally exercised its option; now holds a valid lease on said real estate; is entitled to possession thereof; and asked for specific performance of the terms of the lease.

Trial to the court resulted in judgment for plaintiff as prayed. It was ordered that defendants specifically perform the contract as provided in the lease.

On and prior to April 25, 1963, defendants were owners of approximately forty acres of land located in Independence, Jackson County, Missouri. It was bounded on the west by Noland Road. Approximately fifteen acres of this land had been developed by defendants, by the construction of dwelling houses and a shopping center, but the remainder was open. Defendants proposed to develop the major portion of this remaining land by construction of apartment houses and a motel. The State of Missouri proposed to and, later, did construct Highway I-70 extending from Kansas City easterly to St. Louis, passing under Noland Road. It was also planned by the State Highway Department that a ramp be constructed from I-70 to Noland Road adjacent to this property. Plaintiff became interested in acquiring a lease on a portion of this land, consisting of less than one acre, for constructon and operation of a gasoline service station thereon, where gasoline and other related products would be dispensed and where motor vehicles would be serviced.

Mr. Morris, plaintiff's assistant District Manager, first contacted defendants regarding this matter. The plot of ground here involved was located and general terms of a lease were discussed. The testimony was that, several days later, Morris and defendants again discussed the matter but no lease was signed. About two weeks later, representatives of plaintiff, including Mr. Berry discussed with defendants and with Mr. Bevins, their attorney, a proposed lease form, which was complete except for a clause later added providing that the cost of filling the land to desired level should be shared by the parties. That discussion occurred in the office of Mr. Bevins and lasted for perhaps an hour. Mr. Bevins read the terms of the lease aloud to defendants and several objections by Mr. Lewis were discussed. Mr. Bevins suggested changes in the description. The lease was dated April 25, 1963, but was not signed until May 10, 1963.

On May 10, Berry and Morris visited defendants and presented them with the lease as drafted but, at their home, typed and added a clause that the cost of filling would be shared by the parties. Mr. and Mrs. Lewis, Morris, and Berry then went to the office of a notary public where defendants signed and executed the lease which is here in controversy.

The instrument sued on appears on a printed form entitled "Station Site Lease". The blank portions of this form are filled in by typewriter, as are the description and certain other important provisions, the typewritten parts being initialed by defendants. It is recited therein that, in consideration of one dollar and other valuable considerations, "lessor hereby leases unto lessee * * * (a certain described tract of land) to have and to hold for the term of five years, commencing at 12:00 o'clock noon standard time, the first day of August, 1963 and ending the same hour the first day of August 1968". The agreed minimum rental was $200.00 per month in advance unless otherwise provided therein; the obligation to pay was to begin the day the service station opened for business. It was further provided that rental should be paid on a gallonage basis, one cent per gallon on all gasoline motor fuel delivered to said premises but that the minimum monthly payment would be $200.-00. It was also stated that: "Lessor grants unto Lessee the *continuing option* of extending the primary terms of the lease for four additional separate successive periods of five years each", (emphasis ours) on the same terms and conditions as therein stated. It was also provided that defendants should provide an east-west road for access to this property. It is also stated that this lease shall not become effective until executed by a vice-president of plaintiff and a copy delivered to defendants and if lessee shall fail to deliver an "executed counterpart of this lease" to lessor on or before ninety days from the date thereof, both parties shall be relieved of all obligations thereunder except as further stated. The evidence established that

plaintiff mailed to defendants an executed counterpart of the lease under date of July 23, 1963. Plaintiff contends that it has fully complied with all of its terms and conditions and has fully exercised its option to lease said property according to the "Station Site Lease" executed by the parties on May 10, 1963.

The evidence is to the effect that, on May 13, Mr. Berry prepared a "reconnaisance drawing" of the land and its surroundings. On May 16, Mr. Berry forwarded to plaintiff's officials two classified traffic count records with the reconnaisance drawing. Mr. Berry also visited various state and city officials to compile and verify data considered necessary in order to evaluate the financial feasibility of the proposed investment. In May officials of plaintiff made engineering and other studies deemed necessary, and visited and physically inspected the premises. The evidence was that, approximately on July 9, 1963, officials of plaintiff visited defendants and discussed a proposed revised lease, making changes in the description of the property (which, according to plaintiff's evidence, were intended to merely clarify same) and other minor changes. This instrument was in evidence as exhibit 5. Defendants refused to agree to such changes and their attorney notified plaintiff that defendant would not go forward with the lease as previously executed.

On July 23, plaintiff wrote defendants that it had exercised its rights under the lease and forwarded them an executed counterpart thereof in accordance with the terms of the lease. This letter and its enclosure were received by the defendants on July 25, 1963, prior to the expiration date mentioned in the lease. It is plaintiff's position that the lease constituted a ninety day option for its acceptance, secured by a separate consideration of one dollar. Defendants contend here, as they did below, that plaintiffs proposed a lease different in some respects from the original, had rejected the lease sued on, and

had made a counter offer which defendants had rejected.

Thereafter, plaintiff took several steps preliminary to construction of the station site and, on March 17, 1965, notified defendants' attorney reaffirming its contention that it had duly exercised its option under the lease and requesting that defendants furnish abstract of title to the property, under the terms of the lease, which defendants failed to do.

There was testimony on behalf of plaintiff's agents to the effect that it was stated to defendants during negotiations that, under the lease, plaintiff had ninety days from April 25, 1963, in which to accept or reject the lease; that defendants, together with plaintiff's agents, read every word of the various provisions of the lease; and that no one for plaintiff had ever informed defendants or their attorney that this lease was unsatisfactory or unacceptable.

Mr. Lewis stated that, although he signed a paper, exhibit 3, acknowledging receipt of one dollar in cash as consideration for execution of the lease, he did not, in fact, receive the one dollar. Plaintiff's witnesses testified positively to the fact that the one dollar was paid when the receipt was signed.

We are required to review this case upon both the law and the evidence but the judgment may not be set aside unless clearly erroneous; and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. All fact issues upon which no specific findings are made (none were made here) shall be deemed found in accordance with the result reached. Sec. 510.310 R.S.Mo.1959, V.A.M.S. Many of the chief fact questions here involved must be resolved by reference to the oral testimony of the witnesses offered by the respective parties.

One of defendants' principle contentions is that the "Station Site Lease" is not an option to lease, as the court found it to be, but is a revocable offer to make a lease which had not been accepted or signed by plaintiff when defendants withdrew same and so notified plaintiff. While it is not specifically stated therein that it is an option to lease, yet the payment by plaintiffs of one dollar as consideration for its execution is an indication that the parties so treated it, and intended to do so, as an option. See Corbin on Contracts, Vol. 1, p. 503. Furthermore, the contract provided that, unless plaintiff shall deliver to defendants a facsimile thereof, signed by a vice-president, within ninety days from the date of the instrument, the lessee and lessors would be relieved of further *liability* to each other. The fact that plaintiff, immediately after May 10, began and continued an investigation of the feasibility of its proposed investment in an indication of plaintiff's belief that it had an irrevocable option to lease. It is apparent that it expended considerable sums in gathering necessary information prior to August 1, the date the lease was to begin running, if it should become effective.

■ An option grants an exclusive privilege to accept or reject a continuing offer within a specified time. Davison v. Rodes, Mo.App., 299 S.W.2d 591, 594.

■ In Hoppock v. Gaines, Mo.App., 284 S.W. 191, 194, it was said that the use of the word option in a contract is not conclusive but the contract must be construed by what its language means rather than by the definition of certain terms used therein. In State Mutual Life Assur. Co. of Worcester, Mass. v. Dischinger, 263 S.W.2d 394, 401, the Supreme Court said:

"* * *

"The applicable rule is stated in Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S.W. 151, 155, as follows: 'The just interpretation of a contract arises on the whole subject-matter. It must be viewed from end to end and corner to corner, and all its terms pass in review; for one clause may modify, limit, or illuminate the other. * * *'".

We approve the trial court's ruling that exhibit 1 granted a ninety day option to plaintiff to lease the property on the terms stated therein for a term of five years. It also granted to it a "continuing" option to lease the property for four additional five year terms, as stated in the instrument.

Defendants contend that plaintiff's representatives specifically stated that the contract was unacceptable. That contention was asserted in a letter written to plaintiff by Mr. Bevins. However, plaintiff's agents denied that any of them made such a statement at any time. We will accept the finding of the court, which is, in effect, that plaintiff's agents did not state that the contract, as stated in exhibit 1, was unacceptable.

Defendants also say that plaintiff, by its having tendered a contract differing in certain particulars as to description of the property, and as to the exact date of payment of the monthly rental, thereby rejected the contract and made a counter offer which defendants had the right to reject. In Corbin on Contracts, Vol. 1, p. 384, it is said:

"If the original offer is an irrevocable offer, creating in the offeree a 'binding option' the rule that a counter offer terminates the power of acceptance does not apply. Even if it is reasonable to hold that it terminates a revocable power, it should not be held to terminate the rights and powers created by the contract".

To the same effect see Williston on Contracts, 3rd edition (Jaeger) par. 51, p. 166.

The "revised" lease which was submitted to defendants is identical with exhibit 1 except as to minor changes in the technical legal description of the property involved, and in that it fixed the date for payment of the monthly gallonage rental on the first day of each month during the period of operation of the proposed service station. Exhibit 1 does not fix any date when such payments shall be made. We cannot hold that the suggestion by plaintiff of such minor changes in the instrument, alone and of itself, amounts to an outright unconditional rejection by it of the contract as executed.

Defendants contend that plaintiff may not prevail here because it has slept on its rights and is guilty of laches barring this claim. It is a fact that, on May 10, 1963, construction of I–70 was in progress but the location of the ramp leading to Noland Road, adjacent to defendants' property, had not been determined and had not been constructed. However, the record shows that plaintiff, on July 25, 1963, performed the conditions required to close the option. On September 9, 1963, plaintiff requested that it be furnished with abstract of title as provided in exhibit 1. Defendants' attorney notified plaintiff that his clients would drop the whole matter and were considering the institution of a suit to quiet title. However none was brought. This matter was referred to plaintiff's counsel, for legal action, in May, 1965, and suit was filed October 20, 1965.

In Davis v. Petty, 147 Mo. 374, l. c. 385, 386, 48 S.W. 944, the court held that, in order to be entitled to a judgment for specific performance, plaintiff must show itself ready, desirous, prompt and eager. Plaintiff exhibited itself ready, desirous and eager to close the matter in July, 1963, again in September, 1963, when request was made for delivery of abstract of title. Never has plaintiff indicated by word or deed that it was not ready to proceed. The delay has been occasioned by defendants' positive refusal to go forward with the transaction.

In Kizior v. City of St. Joseph, Mo., 329 S.W.2d 605, 610, (where suit was not instituted until four years after the act complained of was done) the court held that delay alone is not sufficient to authorize the bar of laches and quoted from

Schaeffer v. Moore, Mo., 262 S.W.2d 854–860 as follows:

"Laches in legal significance, is not merely delay but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law".

Defendants offered no evidence tending to show that their situation has been adversely affected by the passage of time. Mr. Lewis stated that he did not, at that time, plan any development of this property but would hold it pending a decision of his children, at some unstated future time, as to what they wished to do with it.

■ Defendants say that plaintiff should not prevail because they were "overreached", that the proposed lease is unfair, burdensome, inequitable and oppressive. It is claimed that this is so because the access to defendants' land remaining in the tract is restricted and reduced, the cost of filling the lot and constructing a thirty-six foot roadway for access thereto will be more than defendants may realize from rentals within the first five year term, and that plaintiff is not required to pay any percentage of profit realized from the sale of merchandise other than gasoline, although it is permitted to sell other products.

The evidence in support of defendants' contention as to these matters is not persuasive. While the minimum monthly rental provided is only $200.00, there was evidence to the effect that one cent per gallon on all gasoline sold could amount to more than $200.00 per month. As to the cost of "filling", the evidence was that

Mr. Lewis is an experienced builder and is familiar with the cost of moving dirt. He was well informed on that subject when he executed this contract. It is reasonable to assume that he was able to and did, when the contract was signed, estimate the reasonable cost of filling and of construction of the access road which, in addition to serving the property here involved, would also serve property located, or to be constructed on the remainder of the tract which was owned by defendants.

Mr. Lewis had been a builder many years. He had constructed and sold some three hundred fifty houses. He also owned and operated a service station located six hundred feet north of the site here involved. The gallonage sale of gasoline at that station, according to the evidence, was from three to four times twenty thousand gallons, the minimum upon which plaintiff agreed to pay one cent per gallon rental.

In Ragan v. Schreffler, Mo., 306 S.W. 2d 494, 496, the court held that absent fraud, accident, or mistake a person cannot avoid a written contract on the ground that he did not attend its terms. The court found no fraud, accident, or mistake. We find no reason to interfere with the judgment of the trial court ordering that defendants specifically perform their contract.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.