UNION SAVINGS ASSOCIATION, Respondent, *v.* J. B. KEHLOR, Appellant.

April 29, 1879.

1. Where a party, by acts or words, induces another to believe in the existence of a certain state of things and to act upon that belief so as to alter his previous condition, he will be estopped to aver the contrary against the party so altering his previous condition.

2. A sum of money paid voluntarily, under no mistake of fact, cannot be recovered back. And the same rule applies where the payment is made in ignorance of facts which the payor has the means of knowing.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

G. M. STEWART, for appellant : A voluntary payment, which one with full knowledge of the facts has made to the other, cannot be recovered back. The *executed transaction* stands. — *Town* v. *Kress*, 55 Ind. 14 ; *Bank* v. *Franklin*, 65 Mo. 104 ; *Awalt* v. *Eutaw Bank Assn.*, 34 Md. 435 ; *Williams* v. *Colby*, 44 Vt. 40 ; *Bank* v. *Reed*, 11 Ohio, 498 ; *Patteson* v. *Cox*, 25 Ind. 261 ; *Benson* v. *Monroe*, 7 Cush.

125 ; *Cook* v. *Boston,* 9 Allen, 393 ; *Woodburn* v. *Stout,* 28 Ind. 77 ; *Brisbane* v. *Davis,* 5 Taun. 143 : *Clark* v. *Dutcher,* 9 Cow. 674 ; *Foster* v. *Kirby,* 31 Mo. 497.  When a party knowingly and voluntarily pays money, which he knows cannot be recovered, he can have no remedy to recover it back. — *Hope* v. *Evans,* 1 Smed. & M. Ch. 195 ; *Sheldon* v. *School District,* 24 Conn. 88 ; *Cummins* v. *White,* 4 Blackf. 356 ; *Wayman* v. *Farnsworth,* 3 Barb. 369 ; *Abell* v. *Douglass,* 4 Denio, 305 : *Tyler* v. *Smith,* 18 B. Mon. 793 ; *Railroad Co.* v. *Frame,* 6 Gill, 68 ; *Waite* v. *Leggett,* 8 Cow. 195 ; *Peterborough* v. *Lancaster,* 14 N. H. 382 ; *Bank* v. *Richardson,* 101 Mass. 287 ; *Real Estate Savings Inst.* v. *Linder,* 74 Pa. St. 371 ; *Eaton* v. *Eaton,* 35 N. J. L. 290 ; *Flower* v. *Laner,* 59 N. Y. 603 ; *Wolff* v. *Marshall,* 52 Mo. 167.  The plaintiff is estopped from recovering in this action. — *Taylor* v. *Zepp,* 14 Mo. 482 ; *Newman* v. *Hook,* 37 Mo. 207 ; *Chouteau* v. *Geddin,* 39 Mo. 229 ; *The State* v. *Pepper,* 31 Ind. 76.

JOSEPH SHIPPEN, for respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an action to recover money alleged to have been paid by the plaintiff to the defendant under a mistake of fact.  There was a trial by the court, and a finding and judgment for the plaintiff; from which the defendant appeals.

It appears that the defendant was a flour-dealer in St. Louis, and in January, 1875, sold to one Sherburn, in Lowell, Massachusetts, one hundred barrels of flour.  Sherburn accepted a draft drawn by the defendant at thirty days, dated March 15, 1875, for $671, being the price of the flour, less freight.  This draft was handed by the defendant to the plaintiff for collection.  The plaintiff was a banking corporation in St. Louis, with whom the defendant kept his account.  The defendant, at the same time, held another acceptance of Sherburn, maturing May 21, for $308, being

for another shipment of flour in February. The evidence is contradictory as to whether the defendant directed that there should be no protest of the draft, at the time he left it for collection. The plaintiff sent the draft to its correspondent in New York, by whom it was forwarded to a bank in Boston, who forwarded it to a bank in Lowell. By some mistake, the New York correspondent of the plaintiff advised the plaintiff, by a letter received April 23, that this draft was paid and the proceeds were placed to the credit of the plaintiff in the New York bank The draft was not paid; and on the same day, April 23, the defendant received a letter from Sherburn, stating that he was obliged to let his acceptance go to protest; that he had one hundred and eighty barrels of the flour on hand, which he would only sell for cash; that he could not take up the draft until he sold the flour; and requesting the defendant to send Frost, the defendant's Eastern agent, to Lowell, and he would pay him part of the draft, and would remit as he sold, or would give him the flour or the money. The testimony is that Sherburn actually had the flour on hand when he wrote the letter. On receiving this letter, the defendant, who knew nothing of the advices received by the plaintiff, wrote to Frost to go at once to Lowell and get the flour or the money. On the same day, the defendant was told by his book-keeper that the draft was paid, and the proceeds placed to his credit with the plaintiff. He then sent his book-keeper to the plaintiff with Sherburn's letter, which was shown to the plaintiff's cashier, who said that he was not mistaken, the draft was paid, and showed the New York letter. The defendant then sent a dispatch to Frost at Lowell not to take the flour, as the draft was paid. On receiving the dispatch, Frost returned to Springfield, Massachusetts, without seeing Sherburn.

On April 26, the plaintiff received a dispatch from its New York correspondent that the draft had been returned unpaid. The plaintiff then cancelled the credit given to the

defendant, by charging him with the amount of the draft. On the 29th, the plaintiff received the draft from New York, and then for the first time informed the defendant that the draft was not paid, and sent the draft to him. The defendant refused to receive the draft, and the plaintiff then sent it to its New York correspondent, with directions to protest and collect it. The draft was protested on May 5, and was retained by the Eastern bank until its return to the plaintiff, in 1877.

On May 27, 1875, suit was commenced by the defendant in Lowell against Sherburn. This suit was by attachment, and the record shows that it was upon an account which included the shipments for which the draft in question was accepted. The testimony of the defendant and Frost is that they gave no instructions to include this flour in the suit, and did not know it had been done until the deposition was filed in the present case. Soon after this suit had been commenced (as they supposed, for the flour covered by the second draft), the defendant, at the request of the plaintiff, directed Frost to permit the Eastern bank holding the first draft to join in the suit, provided enough property was attached to cover both claims, but directed him not to do anything to relieve them of their responsibility. This action was pending at the date of the trial in the present case. It appears that Frost went, as requested, to the Boston bank, and advised them of his proceedings, and put them into communication with the defendant's counsel in the suit against Sherburn.

The question as to who should bear the loss was discussed between the plaintiff and the defendant from time to time. The testimony is that the plaintiff's officers at last conceded that the defendant ought not to bear it unless he had made himself liable to do so by his suit in Lowell. In July, 1877, the plaintiff paid to the defendant the amount of the draft. This seems to have been done under the impression that the defendant had sued Sherburn only for goods in considera-

tion of which the second draft was accepted.    Afterwards, in November, 1877, this suit was brought.

The instructions given by the plaintiff and those refused to the defendant are numerous and lengthy.    It sufficiently appears from these declarations of law, that the trial court held that the notice received by the defendant from Sherburn relieved the plaintiff from any responsibility that it might otherwise have incurred for any loss accruing to the defendant in consequence of abandoning his efforts to secure his claim.    The court declared the law to be, that if it appeared from the evidence " that the defendant was notified by the acceptor of the draft that the same was not paid, on the same day that the plaintiff, by mistake, paid the amount of said draft to the defendant, the defendant should have acted on such information received from the acceptor, and was not entitled to rely upon the assurance of payment by the plaintiff, given to him on April 23, 1875 ; and that the plaintiff is not estopped from correcting its mistake and recovering herein, although the defendant might have protected himself by securing his claim against the acceptor if he had not relied upon the payment to him, by the plaintiff, of the amount of the draft."

It would seem, however, that if the defendant, relying upon the assurance of the plaintiff that the draft was paid, lost his money in consequence of abandoning steps which he had already set on foot to secure his claim, then the plaintiff is estopped to say that the draft was not actually collected.    The defendant had a right to rely upon the reiterated statement of the plaintiff that the draft was paid. The letter of Sherburn is not absolutely inconsistent with that statement.    Its language in reference to the draft is as follows :  " I am sorry that I am compelled to let that acceptance go to protest.    As I am situated, it is impossible for me to take care of it until I can sell some of the flour." There were two acceptances, one maturing in May, and the defendant swears that when assured the draft was paid he

thought Sherburn had reference to the unmatured draft. And this is not impossible. It was also possible that Sherburn might find means to pay the draft, and pay it after his letter was mailed.

The principle is, that where a party, by acts or words, induces another to believe in the existence of a certain state of things and to act upon that belief so as to alter his previous condition, he will be estopped to aver the contrary against the party so altering his condition. There was evidence in the present case tending to show an admission on the part of the plaintiff inconsistent with his present allegation, on which this suit is based, that this draft was not paid, an action by the defendant on this admission, and an injury to him by allowing the admission to be now disproved. This constitutes an estoppel *in pais* ( *Chouteau* v. *Goddin*, 39 Mo. 250), and we do not see that the letter from Sherburn must necessarily do away with its effect. The plaintiff had received the money at one time on account of this draft; however, it permitted its correspondent subsequently to take credit for the payment as made by mistake. Through some carelessness of some of the agents which the plaintiff, who was charged with the collection of the draft, had employed, the draft was reported paid, and the proceeds placed to the credit of the plaintiff in the books of the bank its correspondent and agent in this transaction in New York. The defendant, on being informed of the collection by the plaintiff, exhibited to the plaintiff the letter in which the acceptor of the draft stated that it would not be honored, and took no steps to countermand proceedings to enforce collection until he had been again assured that the draft was actually paid. The defendant could hardly do otherwise, then, than to countermand his directions as to taking steps against the acceptor, or to recover the property. And it was not until three days after the plaintiff had received advices that the draft was, after all, not paid, that the defendant was notified of the fact. If,

then, in consequence of the mistake of the agents employed by the plaintiff, the defendant lost an opportunity that he would otherwise have had of protecting himself, it does not appear on what ground the plaintiff can now recover from the defendant the money which it has voluntarily paid him on account of this claim.

The testimony is that the money was paid to the defendant by the plaintiff after a period of two years had elapsed from the date of the mistake which was the origin of the controversy.  During that time the claim of the defendant against the plaintiff had been a constant subject of debate between the parties.  All the facts on which the defendant's claim was based were known, or might have been readily known, to the plaintiff.  Even as to the fact that a suit had been brought in Lowell in the name of the defendant, which embraced a claim for the flour covered by the first draft, there was no concealment.  The letters of Frost and the defendant, in evidence, tend to show that Frost's instructions were to leave the matter of any claim for matters arising out of transactions covered by the first draft to be settled by the banks that had reported it paid; that he was to do nothing to relieve them of responsibility.  The testimony is that the defendant did not know that the suit in Massachusetts was founded on an account including the first draft, until after the present suit was commenced; that he did not know the nature of the action which his attorney, who seems to have been also acting for the banks in the matter, had commenced; and that his intention and purpose was to do nothing to shift the responsibility for the non-collection of the first draft.  What had been done in the whole matter from the first was as open to the plaintiff as it was to the defendant.

The court instructed, at the instance of the plaintiff, that, " upon the question whether the plaintiff assumed the responsibility of the collection of the draft, and relieved the defendant from all liability in connection therewith, * * *

the record of the suit brought by the defendant is evidence in favor of the plaintiff that the defendant continued to look to his original debtor for the claim, and that the plaintiff had not assumed the responsibility and liability of the collection." And the court refused an instruction asked by the defendant to the effect that if the plaintiff, with a knowledge of all the material facts out of which the mistake grew, paid the defendant, about July, 1877, the amount of the draft, it cannot recover.

The rule is generally adopted, in Missouri and elsewhere, that a sum of money paid voluntarily, under no mistake of fact, cannot be recovered back. And the same rule applies when the person acts in ignorance of facts which he has means of knowing. *Wolfe* v. *Marshal*, 52 Mo. 167; *Regan* v. *Baldwin* (Mass.), 8 Cent. L. J. 309. The instruction refused was warranted by the evidence. It appears that all the material facts bearing upon the rights of the defendant to this money were fully within the knowledge of the plaintiff, and must have been as well known by the plaintiff when it voluntarily paid this money to the defendant, in July, 1877, as it was in November, 1877, when this action was brought to get the money back.

The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.