L. W. BALDWIN and GUY A. THOMPSON, as Trustees of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellants, v. SCOTT COUNTY MILLING COMPANY, a Corporation.—122 S. W. (2d) 890.

Division One, December 20, 1938.

*Thomas J. Cole, Dearmont, Spradling & Dalton* and *H. H. Larimore* for appellants.

918

*Bailey & Bailey* and *Finch & Finch* for respondent.

FRANK, P. J.—Action by trustees of the Missouri Pacific Railroad Company to recover from Scott County Milling Company the sum of $23,994.33, paid to said milling company by said railroad company by reason of an award of damages by way of reparation made by the Interstate Commerce Commission in favor of said milling company and against said railroad company. The judgment below was for defendant and plaintiffs appealed.

Prior to September 14, 1924, respondent, Scott County Milling Company shipped coal in car load lots over the lines of the Missouri Pacific Railroad Company and other lines from points in Illinois and western Kentucky, consigned to respondent at points in Missouri.

Interstate rates charged by public carriers are subject to regulation by the Interstate Commerce Commission under the Interstate Commerce Act of 1887 and subsequent enactments known as the Hepburn Act and the Transportation Act. These acts do not take from the carriers their power, in the first instance, to fix rates, or to increase or reduce them, but they authorize the Commission, either of its own volition, or upon complaint, to determine whether or not the rates fixed and charged by a public carrier are reasonable or unreasonable, to award damages to shippers by way of reparation be-

cause of unreasonable charges, and to fix reasonable rates for the future. It is both the common law and statutory duty of public carriers to charge no more than a reasonable rate, and when a carrier, in the first instance, fixes and charges a rate which is not reasonable, it thereby subjects itself to a claim for damages by way of reparation on account of the unreasonable charges made to shippers. [Arizona Grocery Company v. Atchison, Topeka & Santa Fe Ry. Co., 284 U. S. 370, 76 Law Ed. 348.]

The rates paid by respondent were not established by the Commission but were fixed by the carriers themselves. Respondent paid the rates exacted on all shipments made prior to September 15, 1924, and on that date filed complaint with the Commission charging, in substance, that the rates had been, then were, and for the future would be unreasonable. The complaint asked the Commission to award respondent damages by way of reparation in an amount equal to the difference between the rates charged and the rates that should have been charged.

A hearing was had on said complaint and the Commission found that the rates charged by the carriers were unreasonable both for the past and the future, prescribed reasonable rates for the future, found what would have been reasonable for the past, and awarded to respondent damages by way of reparation in the sum of $20,142.57, with six per cent interest. Between April 4 and April 19, 1929, the railroad paid to respondent the award with interest amounting to $23,994.33. Thereafter, on April 25, 1929, the carriers filed motion for rehearing which the Commission overruled. On September 7, 1929, a second motion for rehearing was filed and later overruled by the Commission. On October 17, 1929, a motion to modify the order was filed and later overruled. On April 26, 1930, a petition for reopening, consolidation and general investigation was filed and later overruled. On June 3, 1931, a supplemental petition for reopening, consolidation and argument was filed and later sustained by the Commission on November 2, 1931. A rehearing was had, and on July 3, 1933, the Commission set aside all of its former orders including the award of damages made to respondent. Thereafter on October 30, 1934, more than five years after the award had been paid to respondent, appellants made written demand on respondent to return the sum of $23,994.33 theretofore paid to it by the Missouri Pacific Railroad.

The Interstate Commerce Act requires public carriers to charge resonable rates for transportation service. The charge of an unreasonably high rate for such service is a violation of the act. Section 13 of the act (U. S. Code Title 49, Sec. 13) provides that any person or corporation may complain to the Commission because of any violation of the act by rail carrier, and that the Commission

shall hear and determine such complaint and make whatever finding and orders the facts and law justify.

Section 16 (U. S. Code Title 49, Sec. 16) provides that if, after hearing on a complaint as provided in Section 13, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of the act for violation thereof, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on a day named.

Paragraph (2) of said Section 16 provides if a carrier does not comply with an order for the payment of money within the time limit of such order, the complainant may file in the United States District Court, or any state court of general jurisdiction having jurisdiction of the parties, a petition setting forth the causes for which he claims damages, and the order of the Commission in the premises. Such suit, if in the United States Court, shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in such court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of the costs of suit.

■ In the instant action respondent filed complaint with the Commission and secured a finding that the rates charged by the carriers were unreasonable, and an order from the Commission directing that the carriers, within a date named therein, pay to respondent damages fixed at $20,142.57 with interest at six per cent, all of which the carrier paid in full before filing its motion for rehearing with the Commission.

Respondent contends that such payment was voluntarily made with full knowledge of all the facts and without fraud or duress, and for that reason alone plaintiff is not entitled to recover, while appellants say that the payment was made under duress and may be recovered.

Appellants' contention is that the payment of the award was made under duress, (1) because there was no remedy by appeal from the Commission's award, and (2) that if the award had not been paid and the shipper had brought suit for damages, the carriers would have been defenseless because the order of the Commission finding that the rates paid by the shipper were unreasonable would have been conclusive on the court, and in the end the carriers would have been compelled to pay costs, interest and attorney's fees as penalties for resisting the payment of the award.

Appellants' contention cannot be sustained. While the statute does not provide for an appeal from the award made by the Com-

mission, it does provide that if the carrier does not pay the award within the time fixed in the Commission's order, the complainant may, within one year from the date of the award, sue the carrier for damages which, in effect, amounts to a suit to enforce payment of the award. In such a suit the carrier is given its day in court, and may there invoke any and every defense to which it is entitled under the law. We do not agree with appellant's contention that in such a suit the finding and orders made by the Commission are, as a matter of law, conclusive on the court. We agree that the power to fix and regulate interstate rates of public carriers is legislative and not judicial, and is vested in the Interstate Commerce Commission and not in the courts. We also agree that the power to determine whether or not the "carrier made" rates paid by respondent prior to September 15, 1924, were unreasonable was vested in the Interstate Commerce Commission and not in the courts, but in the exercise of such power it was the duty of the Commission to safeguard the constitutional rights of the carriers, and see that its orders were based on substantial evidence. An order of the Commission which violates the constitutional rights of a carrier, or is based on a finding without evidence or upon evidence which does not support it, is not conclusive on the courts and cannot stand if properly assailed. The rule in this regard is stated by the Supreme Court of the United States in Skinner & Eddy Corporation v. United States et al., 249 U. S. 557, 562, as follows:

"If plaintiff had sought relief against a rate or practice alleged to be unjust because unreasonably high or discriminatory, the remedy must have been sought primarily by proceedings before the Commission, Loomis v. Lehigh Valley Railroad Co., 240 U. S. 43, 50; Texas & Pacific Ry. Co. v. American Tie & Timber Co., 234 U. S. 138, 146; The Minnesota Rate Cases, 230 U. S. 352, 419; Robinson v. Baltimore & Ohio Railroad Co., 222 U. S. 506; Baltimore & Ohio Railroad Co. v. Pitcairn Coal Co., 215 U. S. 481; and the finding thereon would have been conclusive, unless there was lack of substantial evidence, some irregularity in the proceedings, or some error in the application of rules of law, Manufacturers Ry. Co. v. United States, 246 U. S. 457, 482; Pennsylvania Co. v. United States, 236 U. S. 351, 361; Los Angeles Switching Case, 234 U. S. 294, 311; Kansas City Southern Ry. Co. v. United States, 231 U. S. 423, 440; Proctor & Gamble Co. v. United States, 225 U. S. 282, 297-298; Interstate Commerce Commission v. Union Pacific Railroad Co., 222 U. S. 541."

See also cases cited in footnote to Arizona Grocery Company v. Atchison, Topeka & Santa Fe Ry. Co., 284 U. S. 370, 386, 76 L. Ed. 348.

In Meeker v. Lehigh Valley Railroad Company, 236 U. S. 412, 59 L. Ed. 644, 657, the court determined the legal effect of the statute which makes the order of the Commission prima facie evidence of

the facts stated in the order, in the trial of a suit by the shipper against the carrier to recover damages because of the exaction of unreasonable freight charges. The court there said:

"It is also urged, as it was in the courts below, that the provision in Section 16 that, in actions like this, 'the findings and order of the Commission shall be prima facie evidence of the facts therein stated' is repugnant to the Constitution in that it infringes upon the right of trial by jury and operates as a denial of due process of law.

"This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents. Nor does it in anywise work a denial of due process of law. In principle it is not unlike the statutes in many of the states, whereby tax deeds are made prima facie evidence of the regularity of all the proceedings upon which their validity depends. Such statutes have been generally sustained."

Speaking to the same question in Mills v. Lehigh Valley Railroad Company, 238 U. S. 473, 482, 59 L. Ed. 1414, 1418, the court said:

"The statutory provision merely establishes a rule of evidence. It leaves every opportunity to the defendant to contest the claim."

In Watkins on Shippers and Carriers (4 Ed.), section 379, the author says:

"The award is not a judgment but is prima facie evidence of the facts stated, and the finding that a rate exacted is unreasonable and that plaintiff has suffered damages, does not preclude the defendant from showing in court facts constituting a defense."

■ Appellant argues, in effect, that since the making of a rate for the future, or the determination that a rate charged in the past was unreasonable, are legislative functions vested in the Commission, the result reached by the Commission in the exercise of such functions is conclusive upon the courts. This argument cannot be sustained. The true rule is stated in Northern Pacific Railway Company et al. v. The Department of Public Works of the State of Washington et al., 268 U. S. 39, 44, as follows:

"But where rates found by a regulatory body to be compensatory are attacked as being confiscatory, courts may inquire into the method by which its conclusion was reached. An order based upon a finding made without evidence. The Chicago Junction Case, 264 U. S. 258, 263, or upon a finding made upon evidence which clearly does not support it, Interstate Commerce Commission v. Union Pacific Railroad, 222 U. S. 541, 547, is an arbitrary act against which courts afford relief."

■ In the instant case, the Commission found (1) that the rates exacted from respondent in the past were unreasonable, and

(2) fixed the rates that should have been charged, and ordered that reparation be made in accordance with the rates so fixed. If these orders of the Commission were within constitutional limits and were based on substantial evidence, the carriers had no lawful right to have them set aside by the Commission. On the other hand if such orders did not safeguard the carriers' constitutional rights, or were "based upon a finding made without evidence, or upon a finding made upon evidence which clearly does not support it," the carriers had ample opportunity to have such questions determined by a court of competent jurisdiction before paying the award.

The reparation award made by the Commission is not a judgment and the Commission could not have enforced its payment. The Interstate Commerce Act provides that if a carrier does not pay the award within the time fixed in the Commission's order, the shipper may bring a suit against the carrier in a court of competent jurisdiction to recover damages because of the unreasonable charges exacted, and in such suit the order of the Commission shall be prima facie evidence of the facts stated in such order.

The carrier could have refused to pay the award made by the Commission and awaited a suit by the shipper, in which suit it could have invoked every defense which the law afforded it. It did not take that course, but on the contrary paid the award in full before filing its motion for rehearing with the Commission. Such payment was voluntarily made with full knowledge of the facts and without fraud or duress. One who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it back. [Claflin et al. v. McDonough, 33 Mo. 412, 415; Ferguson v. Butler County, 297 Mo. 20, 247 S. W. 795; National Enameling & Stamping Co. v. City of St. Louis, 40 S. W. (2d) 593; Bank v. Bank, 244 Mo. 554, 587, 149 S. W. 495.]

It is contended that the payment of the award was made under mutual mistake of fact.

No contention is made that the parties were mutually mistaken about the facts which would determine whether the rates charged were reasonable or unreasonable. The contention is that the reasonableness or unreasonableness of the rates charged was a question of fact to be determined by the Commission; that when the Commission found that the rates charged were unreasonable, both parties thereafter acted under the belief that such rates were unreasonable because the Commission so found; that their mutual mistake in so believing and acting was a mistake of fact not discoverable until the Commission later set aside its order.

A mistaken belief of the parties that the finding of the Commission was either right or wrong would not be a mutual mistake of fact. A mutual mistake of fact, as that term is used in the law, means in this case a mutual mistake as to the existence or non-existence of

facts determinative of the reasonableness or unreasonableness of the rate. If the existence of material facts had been unknown to the parties, or if they had acted under the mistaken belief of the existence of facts which did not exist, it might then be said that they acted under a mutual mistake of fact. But such is not the case. If the finding of the Commission was wrong, that was merely an error in the decision of the Commission, for which the statute afforded the carriers a complete and adequate remedy.

Contention is made that respondent has received money which is now the property of appellants, and which, in equity and good conscience, respondent should pay to appellants.

In an action for money had and received the plaintiff is entitled to recover if, under the facts shown, it would be contrary to equity and good conscience for the defendant to retain the money. The converse of the rule is also true. In such an action the plaintiff cannot recover if it appears from the facts that it would be inequitable and unjust to compel defendant to return the money. [Teasdale v. Stoller, 133 Mo. 645, 34 S. W. 873; Bull v. United States, 295 U. S. 247; Atlantic Coast Line Railroad Company v. Florida, 79 L. Ed. 1451; 41 C. J., p. 51, sec. 39.]

A reparation award is not a judgment, and the Commission has no power to enforce its payment. The only method provided for enforcing payment is in a suit for damages brought by the shipper against the carrier in a court of competent jurisdiction, within one year from the date of the award. In this case the carrier did not await the bringing of such a suit in which it could have asserted its defenses, if any, but with full knowledge of all the facts and without fraud or duress, voluntarily paid the award in full before filing its motion for rehearing with the Commission, and without hint or suggestion to respondent that the matter would be further litigated. The effect of the carrier's act in voluntarily paying the award under the circumstances shown, was to treat the matter as a closed transaction, and cause respondent to believe that the litigation was ended.

Respondent was under contract to pay its representative fifty per cent of the amount recovered from the carrier. When the carrier voluntarily paid the award in full, respondent treated the case as a closed transaction and paid its representative ($11,997.16), fifty per cent of the award, and used the balance for its general corporate purposes, including payment of dividends to its stockholders. The carrier paid the award in April, 1929, and did not demand return of the money until October 30, 1934. If respondent were required, at this late date, to repay the amount of the award to the carrier, it would mean a loss to respondent of the $11,997.16 which it paid to its representative, since the Statute of Limitations would now be a complete bar to any claim respondent might assert against its representative for the return of the money. Furthermore, respond-

ent would be deprived of his statutory right to have some court determine the validity of its claim against the carrier, since the carrier's voluntary payment of the award prevented respondent from bringing a suit for damages in a court of competent jurisdiction, within one year from the date of the award, wherein the rights of the parties could have been judicially determined.

The record justifies the conclusion that the carrier's voluntary payment of the award caused respondent to believe that the matter was a closed transaction, and induced it to act on that belief and thus alter its position by paying to its representative fifty per cent of the award. Respondent is now in a position where it cannot recover back the amount paid to its representative, or maintain an action against the carrier for damages on account of the exaction of unreasonable rates, because both claims are long since barred by the Statute of Limitations. These changed conditions were caused by the carrier's voluntary payment of the award, and its long wait thereafter before demanding return of the money so paid. It would be against equity and good conscience and a rank injustice to require respondent to repay the amount of the award to the carrier when the carrier's own act in voluntarily paying the award induced respondent to change its position so that it cannot now be placed *in statu quo*.

In 48 Corpus Juris, 767, section 327, the rule is thus stated:

"In general, where a payee has changed his position to his prejudice in reliance upon the payment and cannot be placed *in statu quo*. the payment cannot be recovered, although made under a mistake of fact; and so, where the payee has irrevocably changed his position in reliance upon a payment made by the payor under a mistake of fact caused by his own negligence or lack of diligence in taking advantage of means and knowledge available to him, there can be no recovery except when the payor's negligence was induced by negligence on the part of the payee. . . ."

Our courts state the law as follows:

"The rule (is) that where one by his words or conduct willfully causes another to believe in a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." [Lumber Co. v. Kreeger, 52 Mo. App. 418 at 421; Union Savings Assn. v. Kehlor, 7 Mo. App. 158; Taylor v. Zepp, 14 Mo. 482; Bates v. Perry, 51 Mo. 449; Spurlock v. Sproul, 72 Mo. 503; Acton v. Dooley, 74 Mo. 63.]

Other contentions are made by the parties, but since what we have said necessarily determines the case, no purpose would be served in discussing other questions raised.

The judgment below was for the right party and should be affirmed. It is so ordered.

PER CURIAM:—The foregoing opinion prepared by the late WILLIAM F. FRANK, Presiding Judge of Division One, being unsigned at the time of his death, is now adopted as the opinion of the court. All the judges concur, except *Lucas, J.*, not sitting because not a member of the court when cause was submitted.