**KURN et al. v. PITTSBURGH PLATE GLASS CO.**

**THOMPSON v. SAME.**

**Nos. 1110, 1111.**

District Court, E. D. Missouri, E. D.

Dec. 24, 1942.

M. G. Roberts, C. H. Skinker, Jr., and John E. McCullough, all of St. Louis, Mo., for plaintiff Kurn and others.

Leland Hazard, of Pittsburgh, Pa., and Victor A. Wallace, and Igoe, Carroll, Keefe & Cuburn, all of St. Louis, Mo., for defendant.

H. H. Larimore, Toll R. Ware, and Geo. W. Holmes, all of St. Louis, Mo., for plaintiff Guy A. Thompson.

COLLET, District Judge.

These cases against the same defendant were submitted together. In each the plaintiff interstate carriers seek recovery of switching allowances made to the defendant shipper, which allowances were later held by the Interstate Commerce Commission to be unlawful preferences. The defenses are: First: That the actions are barred by the three-year limitation of the Transportation Act,[1] or, Second: By the five-year Missouri Statute[2] of Limitation, and, Third: That the payments were voluntary. The facts were stipulated and summarized, are as follows.

The plaintiffs Kurn and Lonsdale are the trustees of the St. Louis-San Francisco Railroad Company. Thompson is trustee of the Missouri-Illinois Railroad Company. Both railroads are Missouri corporations. The trustees are all residents of Missouri. The defendant is a Pennsylvania corporation. The Frisco action is for the recovery of $4,472.00 and interest. In the Missouri-Illinois action the recovery sought is $2,838.75 and interest. Jurisdiction of the former action is predicated upon diversity of citizenship and that the proceeding arises under laws of the United States, particularly Section 6(7) of the Interstate Commerce Act, 49 U.S.C.A. § 6(7), and Section 1 of the Elkins Act, 49 U.S.C.A. § 41(1). Jurisdiction of the latter is based on the assumption that the action arises under the laws of the United States noted.

The Frisco in 1921 and the Missouri-Illinois in 1932, entered into written agreements with defendant by which the Frisco agreed to pay defendant .65 cents per car and the Missouri-Illinois .75 cents per car for certain switching operations which defendant was to perform and which were assumed by the parties to be an incident of the line haul and covered by the line haul tariff. These contracts were made under the authorization of 49 U.S.C.A. § 15, par. 13. Tariffs providing for the payments specified in the contracts were duly filed with the Interstate Commerce Commission. The practice contemplated by the agreements and tariffs and which was actually followed was for the shipper to pay the total line haul tariff rate and for the carriers to then refund to the shippers that part of that rate representing the value of the service performed by defendant under the special contract and related tariff.

On September 12, 1935, the Interstate Commerce Commission after investigation of the propriety of these arrangements, filed its report and order finding that the payments by the carriers to the defendant constituted unlawful preferences and ordered the discontinuance of the practice and the cancellation of the tariff providing therefor, effective October 31, 1935. Pittsburgh Plate Glass Co. Terminal Allowance, 210 I.C.C. 527.

In American Sheet & Tin Plate Co. v. United States, 15 F.Supp. 711, the District Court for the Western District of Pennsylvania on October 22, 1935, issued an interlocutory injunction and on July 29, 1936, by final decree, made that injunction permanent. On May 17, 1937, the Supreme Court reversed. United States v. American Sheet & Tin Plate Co. et al., 301 U.S. 402, 57 S.Ct. 804, 81 L.Ed. 1186. The mandate

---

[1] 49 U.S.C.A. § 16(3) (a), (3) (e).

[2] Sec. 1014, R.S.Mo.1939, Mo.R.S.A. § 1014.

was carried out by decree of the District Court entered November 27, 1937.

It appears from the order of the District Court that pursuant to the order of the Interstate Commerce Commission, the carriers filed tariffs cancelling the contract allowances and that the cancelling tariffs were suspended, and later enjoined, by the District Court. During the period subsequent to the Commission's order and prior to the decision of the Supreme Court, the carriers continued to pay defendant the contract allowances. During the period beginning November 1, 1935, and ending September 30, 1937, the Frisco paid $4,472.00 and the Missouri-Illinois $2,838.75. The present actions for the recovery of those payments were filed August 1, 1941.

While the facts disclose a serious question of jurisdiction, at least as to one of the actions, that issue, in view of the conclusions reached on the merits, need not be determined.

Is recovery barred by the three year Statute of Limitation of the "Interstate Commerce Act"? The statute, 49 U.S.C.A. § 16, Pars. (3) (a) and (3) (e), is as follows:

"§ 16, par. (3) Limitation of actions. (a) All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after. * * *

"(e) The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after."

▮▮▮ Plaintiffs take the position that the actions are not "for recovery of their charges", but are in the nature of actions for money had and received, wholly unrelated to the collection of line haul charges, and hence not within the purview of Paragraph (3) (a) supra. T. M. Partridge Lbr. Co. v. Michigan Cent. R. Co., 8 Cir., 26 F.2d 615, 616, is cited as authority for that contention. In that case the carrier had refunded an overcharge and in doing so had refunded too much. The shipped refusing to return a portion of the excessive refund, the carrier sued therefor. A majority of the Court held that the action was "on [an] implied contract to refund money paid through error", and, the jurisdictional amount not being involved, dismissed for want of jurisdiction. Judge Van Valkenburgh dissented, expressing the conclusion that the action was in effect one for the recovery of a part of the carrier's charge, otherwise the ultimate result of the overpayment would have been an unlawful rebate to the shipper. The facts in that case are different in at least one material respect from the facts now presented. There the payment for which recovery was sought was made without the authorization or compulsion of any existing tariff. It was purely the result of a mistake and the payment was made as a result of a mistake in calculation. For that reason it must be distinguished from the case at bar. Here the payments were made under a tariff duly filed and appropriately authorizing them. The tariff in turn was authorized by the statute.[3] The statute and the tariff were predicated upon the theory that the shipper performed some essential part of the line haul service and was being compensated therefor *with a portion of the line haul charge.* Upon no other theory could the statute be consistent with the prohibition against rebates and discriminations. The payments made under the tariff were assumed by the parties to be for a service which fell within the authorization of the statute i.e. that they were for a part of the line haul service and merely represented the value thereof. The inescapable result is that the payments to the shipper actually constituted the return to it of a part of the charges for the line haul. At the time made the payments were prima facie lawful, a proper tariff therefor being on file, and unlike the sit-

---

[3] "§ 15, par. (13) Allowance for service or facilities furnished by shipper. If the owner of property transported under this chapter directly or indirectly renders any service connected with such transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the commission may, after hearing on a complaint or on its own initiative, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the services so rendered or for the used * of the instrumentality so furnished, and fix the same by appropriate order, which order shall have the same force and effect and be enforced in like manner as the orders above provided for under this section.

* 'used' should read 'use' ".

uation in the Partridge case, the payments were not made as a result of an erroneous calculation but although ostensibly and intentionally made for a proper purpose, were actually the result of an improper application of the statute. These actions, therefore, in reality seek the recovery of that part of the line haul charges which had supposedly been paid by the shipper in compensable services but which actually had not. The compulsion of the Transportation Act that interstate carriers must collect the proper rate is the moving cause of these actions. Upon no other theory could they be maintained as otherwise the payments made would have been voluntary and pursuant to a written agreement which, absent the invalidating effect of the statute, would constitute a complete defense.

The defendant insists that by paragraph (3) (e) of Section 16, supra, the cause of action accrued when the shipments were delivered to the carrier. That provision can obviously have no application. It must be construed in the light of the other provisions of the Act. Among the latter is the requirement that tariffs be filed and adhered to. When the tariff authorizing these payments was filed it became the lawful obligation and duty of the carriers to make the payments. That obligation and duty continued so long as the tariffs remained uncancelled. Louisville & N. R. Co. v. Central Iron Co., 265 U.S. 59, loc. cit. 65, 44 S.Ct. 441, 68 L.Ed. 900. The rule is stated in Louisville & N. R. Co. v. Maxwell, 237 U.S. 94, loc. cit. 97, 35 S.Ct. 494, loc. cit. 495, 59 L.Ed. 853, L.R.A.1915E, 665, as follows:

"Under the interstate commerce act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."

There could be no cause of action for the recovery of these payments until the tariff was cancelled. That occurred at the latest when the mandate of the Supreme Court was carried out on November 27, 1937.

The language of paragraph (3) (a) is unequivocal. These actions are barred by that statute.

Plaintiffs cite Baldwin v. Scott County Milling Co., 343 Mo. 915, 122 S.W. 2d 890, and Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409, in support of their argument that the present actions are not within the statute. That case originated in the State Court in Missouri. The Missouri Pacific had complied with a reparation order of the Interstate Commerce Commission and repaid to the shipper certain overcharges. Thereafter the Interstate Commerce Commission set aside the order granting reparation and held the former rate just and reasonable. The carrier then sued to recover the refund. The judgment was initially for the shipper. The Missouri Supreme Court affirmed on the theory that the payment was voluntary and that recovery by the carrier some five years after the payment would be inequitable. On review the Supreme Court reversed, holding that the payment was not voluntary but was compelled by the mandate of the Interstate Commerce Act that it comply with the orders of the Commission. The question of limitations was not mentioned. Obviously it had not been set up as a defense. In Missouri the defense of the Statute of Limitations is an affirmative defense and must be pleaded, if relied upon. The issue was not in the case and there was no occasion for the Court to inject it as a defense. That case is not authority in the present action.

The defense that the actions were barred by the Missouri five-year Statute of Limitations is without merit. That statute did not commence to run until the cause of action accrued, less than five years prior to the date the actions were filed.

Nor is the remaining defense that the payments were voluntary, sound. That a carrier voluntarily refunded to a shipper a portion of a legal rate is no defense to an action brought by the carrier to recover the amount paid. Louisville & N. R. Co. v. Williamson, 5 Cir., 87 F.2d 34. The plaintiffs' complaints will be dismissed for the reason stated.