Harold WALLICK, Plaintiff-Respondent,

v.

FIRST STATE BANK OF FARMING-TON, Defendant-Appellant.

No. 35862.

Missouri Court of Appeals, St. Louis District, Division Four.

Jan. 6, 1976.

Dearing, Richeson, Roberts & Wegmann, G. William Weier, Hillsboro, for defendant-appellant.

Thurman, Nixon, Smith & Howald, James E. Bowles, Hillsboro, for plaintiff-respondent.

SMITH, Chief Judge.

Defendant appeals from a judgment against it in accord with the verdict of a jury in a suit in two counts premised upon wrongful dishonor and breach of contract. The judgment was for $770.87 on Count I, the wrongful dishonor, and for $508.42 actual damages and $2,500 punitive damages on Count II, the breach of contract.

Plaintiff made arrangements for the building of a residence in St. Francois County through a general contractor, Clay Wideman. Plaintiff borrowed $26,500 from defendant which was placed in a "special account" in defendant bank. The account was not an escrow account and the bank had no security interest in the account itself. Checks on the account required the signatures of two of three persons, plaintiff, Wideman or Jack Sebastian, an officer

of the bank. Originally, plaintiff would approve invoices and transmit them from the St. Louis area to the bank and checks would be issued, signed by Wideman and Sebastian. Certain difficulties arose with subcontractors and some lack of faith in Wideman arose, so it was agreed that plaintiff would make out the checks which would then be presented by the contractor or subcontractor to Sebastian for signature. In every circumstance except one, checks on the account payable to the contractor or a subcontractor were either signed by plaintiff or were supported by invoices approved by him. The one exception was a check to Jennings Lumber Company for $508.42, signed only by Sebastian and which was unsupported by any invoice, bill or other record in the bank files. The president of the defendant was also the president of Jennings Lumber Company. Sebastian "thought" that plaintiff had orally approved such payment; plaintiff stated that he had not and knew nothing about the check until he received a bank statement some 5 months after the check was issued.

Approximately a year later, on August 26, 1969, the house was largely finished although there were still some items to be corrected. No liens were pending and no money was owed by plaintiff to any contractor or subcontractor. Plaintiff, accompanied by his lawyer, attempted to withdraw from the account the remaining balance, some $1,447. The bank refused to turn over the funds. Plaintiff then issued a check to his wife for that balance; she presented the check to Sebastian for his signature; Sebastian refused to sign the check stating that the money in the account did not belong to the Wallicks. At trial, Sebastian stated that he was trying to be a "good samaritan" to protect any subcontractors who might have claims against Wideman, who by this time was insolvent. He admitted the money in the account belonged to Wallick and the bank had no interest or claim against it. The heating and air conditioning subcontractor had filed a lien and suit against the Wallicks and

Wideman but on Aug. 13, 1969, that suit and the lien were dismissed with prejudice as to the Wallicks. Judgment was entered against Wideman and in October, 1969, a writ of garnishment in execution of the judgment against Wideman was served on the defendant apparently naming the Wallicks as judgment debtors. Without notifying Wallick, the bank, on November 14, 1969, paid over to the Circuit Court $770.87 from Wallick's account. Subsequently, the bank paid to Wallick the amount left in the account after the payment under the garnishment.

Plaintiff's petition was in two counts. Count I sought recovery of the $1447.86 from defendant under a theory of wrongful dishonor. Count II sought recovery of the $770.87 for breach of contract plus punitive damages. Neither count mentioned nor sought relief for the payment to Jennings Lumber Company. Over defendant's objection, the Jennings' transaction was testified to by plaintiff during the trial. Thereafter, and still over defendant's objection, plaintiff was allowed to amend his petition by adding to Count II the allegations concerning the Jennings Lumber payment. Defendant then requested a mistrial and a continuance to conduct additional discovery. These requests were denied. Defendant, on the Jennings' matter, now challenges only the court's refusal to grant a continuance. No challenge is made to the admission of the evidence nor the allowance of the amendment.

It is within the sound discretion of the trial court to grant or refuse a continuance after permitting an amendment to the pleadings during the course of the trial. *Simon v. S. S. Kresge Co.*, 103 S.W.2d 523 (Mo.App.1937) [2]. That discretion is neither an absolute nor arbitrary discretion. *Missouri Public Service Company v. Argenbright*, 457 S.W.2d 777 (Mo.1970). Defendant contends that the amendment rendered obsolete its prior defense and that new defenses would have been asserted had a continuance been granted. ". . . [t]he

fact that a defense is rendered obsolete by an amendment is not a ground of prejudice and . . . the real test is whether additional proof or additional witnesses for which a party is not prepared would be required to meet the new allegations . . . ." *Derboven v. Stockton*, 490 S.W.2d 301 (Mo.App.1972) [4]. Defendant states that records of the bank and lumber company were necessary to defend this new issue. The bank records were available and testified to by Sebastian. Mr. Jennings and Sebastian were both called as witnesses after the amendment and there is no showing that they were not fully prepared to testify on all facets of the transaction.

■ Defendant contends that it needed time to produce evidence that the lumber and materials paid for had actually gone into the house and therefore plaintiff was not damaged. We fail to see how this was relevant to plaintiff's claim. Whether plaintiff owed Jennings Lumber Company money or not was a matter solely between plaintiff and Jennings. The bank's function is to honor its contract with plaintiff; it is not the bank's function to determine which creditors should or should not be paid.

"The word 'volunteer' is frequently defined in terms of a person who pays the debt of another, and in this sense a 'volunteer' is one who, acting on his own initiative, pays the debt of another without invitation, compulsion, or for self-protection; one who pays the debt of another without request, when he is not legally or morally bound to do so and when he had no interest to protect in making such payment; one who pays the debt of a stranger where he is under no legal obligation to do so; one who, without any real or supposed interest of his own to protect, without the debtor's request, without any agreement with either debtor or creditor that he shall be put in possession of the creditor's rights, and without any equity in his own favor, intermeddles and pays the debt." 92 C.J.S. Volunteer, p. 1032. See also *Trinity Universal Ins. Co. v. State Farm Mutual Auto Ins. Co.*, 246 Ark. 1021, 441 S.W.2d 95 (1969) [2–4].

It would be difficult to find a definition which more closely describes the bank's position in this case. It paid over funds to Jennings Lumber for an alleged debt of Wallick and, in breach of its contract with Wallick, charged that payment against Wallick's account. "Except where otherwise provided by statute, it is a well settled general rule that a person cannot, either by way of set-off or counterclaim, or by direct action, recover back money which he has voluntarily paid with full knowledge of all the facts, and without any fraud, duress, or extortion, although no obligation to make such payment existed." 70 C.J.S. Payment § 133. *Baldwin v. Scott County Milling Co.*, 343 Mo. 915, 122 S.W.2d 890[6] (1938), rev'd on other grounds 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409; *R. S. Jacobs Banking Co. v. Federal Reserve Bank of St. Louis*, 34 S.W.2d 173[3–5] (Mo.App.1930). And, see Restatement of the Law, Restitution, Chapter 1, Sec. 2. While the bank characterizes its defense as mitigation of damages, it is more properly a set-off. When the bank made payment to Jennings, it did so as a volunteer or intermeddler and it cannot recover or set-off that payment against plaintiff's claim.

We are unable to find prejudice to the defendant or an abuse of the court's discretion in refusing the mistrial and continuance.

■ As to Count I, defendant contends that no wrongful dishonor occurred because the check issued to Mrs. Wallick did not carry two signatures. We do not agree. The missing signature was that of the bank officer. By that officer's testimony it is clear that the bank had no interest in the money on deposit. Its loan was secured by a deed of trust and payment of checks was in no way dependent upon any security interest of the bank in the funds. The money was Wallick's. Sec. 400.4–402 RSMo

1969 does not define wrongful dishonor. Taking the transaction as a whole including Sebastian's explanation of his reasons for refusal to sign, which were legally insufficient, we find the evidence sufficient to support recovery for wrongful dishonor. Nor do we accept defendant's contention that the wrongful garnishment was the proximate cause of plaintiff's loss. Obviously, if the check to Wallick's wife had been honored, as it should have been, there would have been no funds to which the garnishment could attach and no loss to plaintiff.

 We are unable to approve the award of punitive damages on Count II. Punitive damages are not allowed for breach of contract. *Williams v. Kansas City Public Service Company*, 294 S.W.2d 36 (Mo.1956) [7, 8]. The exceptions to this rule occur where the breach amounts to an independent, willful tort and there are proper allegations of malice, wantonness or oppression. We are not advised by respondent what independent tort is established by the evidence nor do we find one. The award of punitive damages was improper.

We find defendant's other point without merit.

Judgment as to Count I affirmed, judgment as to Count II affirmed as to actual damages, reversed as to punitive damages.

STOCKARD and HOUSER, Special Judges, concur.