**Alfred RYDER and Mary Ann Ryder, Appellants,**

v.

**Max WESCOAT and Virginia Wescoat, Respondents.**

**No. KCD 27484.**

Missouri Court of Appeals, Kansas City District.

March 1, 1976.

Motion for Rehearing and/or Transfer Denied March 29, 1976.

Application to Transfer Denied May 5, 1976.

Ronald A. Barker, Andrew A. Krohn, Barker & Krohn, Princeton, for appellants.

Wm. H. Norton, Jr., Norton & Pollard, Inc., North Kansas City, for respondents.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

This case poses the problem of a rejection on the part of an option holder and a subsequent acceptance within the time limited. The trial court held the rejection terminated all rights under the option. This court holds the option rights were not terminated.

Wescoat, for a valuable consideration, gave Ryder an option to purchase a 120 acre farm upon which Wescoat held an option. The parties agree the deadline for Ryder to exercise the option was September 1. This was prior to the time within which Wescoat had to exercise his option so that in the event Ryder exercised his option with Wescoat, Wescoat would have time in turn to exercise his option and acquire title to convey to Ryder.

The parties do not clash on any factual issue, but rather strongly disagree as to the effect of a rejection Ryder made of his right to purchase the farm.

It is tacitly agreed that on August 20, before Ryder's option expired on September

1, Ryder said he was going to "pass" on the 120 acre farm. Wescoat testified he took this to mean Ryder was not going to exercise his option to purchase such farm, and thereupon talked with a bank about obtaining the necessary financing to purchase the farm himself under his option. Wescoat also stated he talked with a bulldozer operator and obtained a price for doing some work on the farm, and in addition, arranged to do some liming. Wescoat admitted he had not legally obligated himself under any of these arrangements, and stated if Ryder had actually purchased the farm on September 1, he would not have been obligated for any expenditure on the land.

On August 30, Ryder caused a contract to be prepared by which he agreed to purchase the 120 acre farm from Wescoat. This contract along with a down-payment was given to Wescoat on that day. Wescoat refused to sign the contract and stated he did not sell the land to Ryder because of Ryder's previous rejection of his right to purchase on August 20.

The trial court made findings of fact in which it was found Ryder had informed Wescoat on August 20 that he would not exercise his option to purchase and Ryder had thereby rejected and relinquished his option and right to purchase. The court further found on August 30 Ryder undertook to exercise his option but that Wescoat refused to honor the same or to comply with the terms of the option.

■ On review of this court tried case it is the duty of this court to make its own findings, giving due deference to the finding and judgment of the trial chancellor. *Cartmill v. Evans*, 498 S.W.2d 541, 544 (Mo. 1973). Since there is no factual dispute, the only question is the legal effect of the rejection by Ryder and his subsequent acceptance.

No case has been cited, and diligent research on the part of this court has failed to locate any case involving this precise issue. However, text writers have dealt with the problem. In Simpson on Contracts, 2d Ed., § 23, the author states:

"Where an offer is supported by a binding contract that the offeree's power of acceptance shall continue for a stated time, will a communicated rejection terminate the offeree's power to accept within the time? On principle, there is no reason why it should. The offeree has a contract right to accept within the time. At most rejection is a waiver of this right, but waiver not supported by consideration or an estoppel by change of position can have no effect upon subsequent assertion of the right. So an option holder may complete a contract by communicating his acceptance despite the fact that he has previously rejected the offer. Where, however, before the acceptance the offeror has materially changed his position in reliance on the communicated rejection, as by selling or contracting to sell the subject matter of the offer elsewhere, the subsequent acceptance will be inoperative. Here the rejection is a waiver of the offeree's contract right to accept the offer, binding the offeree by estoppel, so his power to accept is gone."

To the same effect is Corbin on Contracts, Vol. I, § 94, p. 392, 1963.

■ It must be kept in mind Ryder had purchased for a valuable consideration the right to purchase this farm. This removes this case from the rule applied in those cases where an offer has been made, but the offeree has not paid any consideration for the making of the offer. In those cases, it is uniformly held that a rejection of the offer terminates the offer. Likewise, the making of a counter-offer terminates the original offer and places it beyond the power of the offeree to thereafter accept the offer.

However, the courts treat options which are purchased for a valuable consideration in a different manner. Thus, in *Sunray Oil Company v. Lewis*, 434 S.W.2d 777 (Mo.App. 1968) this court quoted with approval from *Corbin on Contracts* the rule that a counter-offer does not terminate the power of acceptance when the original offer is an irrevocable offer. In *Lively v. Tabor*, 341 Mo.

352, 107 S.W.2d 62, 66[3–7] (1937) it was stated:

"The purpose of an option contract for land is to bind the landowner for a valuable consideration not to withdraw a specified offer for the sale thereof during a fixed period, so that he is bound 'to convey his land to another upon condition that such other shall, within a specified time, accept his offer and comply with the terms proposed.'"

■ Since an option stands on a different footing from an offer which is made without consideration being paid therefor, and since it has been held that an option is irrevocable for the time stated, and that a counter-offer does not effect a rejection, it necessarily follows that a rejection standing alone would not end the rights of the option holder. This court adopts the rule stated in *Simpson* and *Corbin* and holds that a rejection of an option which has been purchased for a valuable consideration does not terminate the rights of the option holder unless the optionor has materially changed his position prior to a timely acceptance.

This rule fully protects the rights of both parties. It extends to the optionor the protection he requires in the event a rejection of the option is communicated to him and he thereafter changes his position in reliance thereon to his detriment. At the same time it protects the right of the option holder to have the opportunity to exercise his option for the full period for which he paid, absent the material change in position.

■ To apply this rule in this case, it must be held Ryder retained his right to exercise the option for the reason Wescoat has not shown any material change in his position between the time of the rejection and the later acceptance. The material change required by the rule adopted is the same as that in the well established rules of estoppel. This requires that a party must suffer a legal detriment or change his position for the worse and be prejudiced. *Martinelli v. Security Insurance Co. of New Haven*, 490 S.W.2d 427 (Mo.App.1972).

■ Wescoat did not show that he had suffered any detriment, had changed his position for the worse, or had been prejudiced by any action he took between the time of Ryder's rejection and acceptance. Wescoat talked about obtaining a loan, doing bulldozing and spreading lime on the farm, but actually took no action which obligated him to pay prior to Ryder exercising his option to purchase. In that situation, Wescoat did not materially change his position prior to the acceptance by Ryder, and Ryder's acceptance prior to September 1 was a valid exercise of his right to purchase the farm.

Wescoat's position on this appeal is based solely on the proposition that a rejection once communicated terminated all Ryder's rights under the option. In taking this position, Wescoat relies on cases involving continuing offers for which no valuable consideration was paid. In addition, Wescoat relies on *Doerflinger Realty Company v. Maserang*, 311 S.W.2d 123 (Mo.App.1958). However, that case was decided upon a disputed factual question of whether or not a loan had been obtained upon the terms the purchaser agreed to accept. The court did not discuss the issue present in the case at bar, and nothing in that case indicates anything contra to the holding in this case.

The parties have not raised any other question concerning the validity of the option. The only question presented to this court is the effect of the rejection by Ryder as shown by the circumstances in this case.

The judgment in favor of Wescoat is reversed and the cause is remanded with directions to enter a judgment in favor of Ryder. The court shall direct specific performance of the agreement between Ryder and Wescoat for the purchase and sale of the 120 acre farm. The court is also directed to enter judgment in favor of Wescoat and against Ryder for $1500 admittedly due Wescoat under the option.

All concur.