In the Matter of the ESTATE of Nancy Burch PARKER, Deceased.

James H. BERNARD, Executor, et al., Appellants,

v.

Leah BURCH et al., Respondents.

No. 59242.

Supreme Court of Missouri, En Banc.

May 5, 1976.

Warren E. Slagle, Slagle & Bernard, Kansas City, for appellants.

Charles Spooner, North Kansas City, Gary R. Titus, Independence, for respondents.

MORGAN, Judge.

This case involves a dispute over a savings account in The Farmers Trust Company of Lee's Summit, Missouri, originally owned by Nancy (Burch) Parker, now deceased. Her executor filed an affidavit under § 473.340, RSMo 1969, to discover assets, namely, the bank account in question. The bank filed an interpleader petition in Probate Court naming Leah Burch and Bernice Hamilton [1] as claimants—both filed interpleader claims.

The Probate Court found in favor of the executor, and Leah Burch and Bernice Hamilton appealed. Thereafter, the Circuit Court reversed in favor of Leah Burch after finding her to have been the sole joint tenant of the account with deceased and now owner of the whole by survivorship. The executor and Bernice Hamilton appealed to the Court of Appeals, Kansas City District, which reversed in favor of the executor. Upon application of Leah Burch, the cause was transferred to this court and will be considered as on original appeal. Rule 83.09.

On August 18, 1959, Russell Parker and Nancy Parker, husband and wife, opened the account with an initial deposit of $10,-000. This was a joint account with right of survivorship. One additional deposit was made to the account by the Parkers on January 5, 1961. All other additions were by way of interest credited. Russell Parker died on March 2, 1962, at which time the bank indicated the same on the ledger sheet and signature card. It was the only account in the bank maintained by the Parkers and it bore no account number—a practice followed by the bank at that time, but since changed. The widow, Nancy Parker, died on October 24, 1970, and the Savings Account Passbook, still in the name of "Russell Parker or Nancy Parker," was

---

1. She was identified as a former employee of the bank in charge of signature cards for savings accounts.

found among her possessions at her residence.

Two signature cards, in addition to the original card of the Parkers signed in 1959, were found in the alphabetical signature card file at the bank. All cards are of the same form. On the front side, authorized signatures (for withdrawal purposes) are recorded; on the back side, is found the form used for designation of joint or survivorship accounts.

The first additional card shows the authorized signatures to be Nancy Parker, Leah Burch and Bernice Hamilton. The signature of Hamilton has been partially erased and stricken. On the reverse (ownership) side, the signatures are shown as the same with that of Bernice Hamilton crowded in (where there are no lines) to the left of the other two.

The second additional card shows the authorized signatures to be Nancy Parker, Robert M. Norfleet and Bernice Hamilton. On the reverse (ownership) side, the signatures are shown as Nancy Parker and Bernice Hamilton.

Both cards show "Date opened—4/27/70" and the first shows "Card Ret-d—5/1/70" and the second "Card ret'd 5/5/70."

There is no dispute as to the authenticity of the signatures. Robert M. Norfleet testified that he signed the card (for withdrawal purposes) at Mrs. Parker's request at a time when hers was the only signature on the card. Otherwise, there was no evidence as to the date or circumstances surrounding the execution of these cards or how, when or by whom they were placed in the bank's signature card file. The cards do not bear the initials of any officer in the place designated "O.K. by ___" and the executive officer of the bank testified that neither he nor any other officers of the bank, authorized to approve the cards, knew of their existence prior to the death of Mrs. Parker. He further testified that there was nothing on the cards or in the bank records to relate the cards to the account in question, other than the fact that they contained Nancy Parker's name and signature and she had only one account in the bank.

Somewhat in explanation, he also testified that: " . . . sometimes an employee can take a card out, and have it signed, and brought back. Usually it is initialed in most cases. * * * at this time, we did not have an account number . . . since we're getting so many we're now numbering accounts." His testimony also reflects that little attention was given to keeping passbooks current.

Mr. Norfleet, who claimed nothing by reason of his name being on the signature card, testified: that the Parkers and Burches had for years owned and operated a greenhouse together; that he had worked for them for over thirty-five years; that Mr. Burch was a brother of Mrs. Parker; that Parkers had always said the money "would go" to the Burches; that Mrs. Parker was "furious" when she discovered she had signed a paper giving Bernice Hamilton a power of attorney, and that she did not want her to come in her house again.

Another witness, a cousin of Leah Burch, testified that Mrs. Parker said on one date she had discovered Bernice Hamilton going through her purse.

An attorney, Ben R. Swank, Jr., testified that he was asked to prepare, and have executed, a revocation of a power of attorney given the day before by Mrs. Parker to Bernice Hamilton. He testified that: "She [deceased] advised me that she believed Mrs. Hamilton was trying to obtain a part of her assets or her estate, against her will." When he delivered a copy of the revocation to Mrs. Hamilton, as well as the bank, "She advised me, at that time, that she did not object to the revocation of the power of attorney. She said she was only trying to help." He further testified that: "I asked her [and a bank official] to deliver the power of attorney, which had been delivered previously to the bank, which was being revoked by the new instrument. I was advised by them that it had been already withdrawn from the bank's records, and destroyed." It was established also that Bernice Hamilton's father was a cousin of deceased, Nancy Parker.

By a codicil to her last will and testament, dated October, 1970, Nancy Parker had given "everything" to Leah Burch. Therein, no mention was made of the questioned savings account.

The original passbook issued to Parkers contained the following: "This book is accepted and all deposits are made subject to the By-Laws of the Bank as herein printed and made a part of this contract." In the back of the passbook, under the heading "Rules and Regulations for Savings Deposits," is found: "Each depositor on opening an account agrees to be governed by all of the rules and regulations of the Bank concerning deposits." A printed portion of the signature cards provides: "I hereby agree to the By-Laws, rules and regulations of the above mentioned bank, governing deposits made in its checking department now—or hereafter adopted by said bank."

Based on such evidence, the trial court found that the deceased (Nancy Parker) "never authorized anyone to place interpleader Hamilton's name on the account." Judgment was then entered in favor of Leah Burch after she was found to be the sole and only owner of the savings account by virtue of survivorship.

The relevant statutory provision is § 362.-470 (under the chapter title of "Banks and Trust Companies"), RSMo 1969, to-wit:

When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, and in form to be paid to any one or more of them, or the survivor or survivors of them, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any of them, or to the survivor or survivors of them; and the payment and the receipt or acquittance of the one to whom the payment is made shall be a valid and sufficient release and discharge to the bank or trust company, whether any one

or more of the persons named is dead or alive, for all payments made on account of such deposit prior to the receipt by the bank or trust company of notice in writing signed by any one of the joint tenants not to pay the deposit in accordance with the terms thereof. If more than two persons are named as such depositors and one of them dies, the deposit becomes the property of the survivors as joint tenants.

The executor, in seeking reversal, argues: (1) that no joint tenancy account was created by Nancy Parker with either claimant because no "deposit" was ever made in connection with the claimed change of ownership of the account—thus, § 362.470 does not apply; and (2) that any attempted change of ownership in the account, if such in fact occurred, was an "attempted testamentary disposition" of the same.

Claimant Bernice Hamilton asserts that the statute does apply; that the bank account records show a compliance therewith; that the "presumption" of a valid joint account "was not rebutted by competent or admissible evidence."

Claimant Leah Burch asserts that the judgment of the trial court was correct, because: (1) the evidence established that a statutory joint tenancy was created in accordance with § 362.470; and, (2) the judgment entered is consistent with the opinion of this court in *In Re Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972).

The court in *LaGarce* reviewed the difficulty "courts have had in determining the validity and effect of statutory joint accounts," stemming primarily from efforts to equate the same with common-law doctrines, and therein established a degree of order by declaring at pages 500, 501 of 487 S.W.2d, that:

We have concluded that the heretofore indicated construction placed upon our joint account statutes is erroneous and has been misleading to depositors who have complied with said statutes. Our courts have placed limitations thereon and have added requirements thereto which are not contained in the statutes and are not warranted. Section 369.150

specifically and unqualifiedly provides that if the certificate is issued in the statutory form the account "shall become the property of such persons as joint tenants and shall be held for the exclusive use of the persons so named and may be paid to any person named therein, or the survivor." There is nothing in the statute which would warrant the conclusion that a rebuttable *presumption* is created that the deposit shall become the property of such persons as joint tenants and that it may be shown by competent evidence that it was not a joint tenancy even though the statutory form had been complied with. The statute says it "*shall become the property of such persons as joint tenants.*" The limitations were placed upon the statute by judicial interpretation apparently resulting from a consideration of common-law principles. It is our view that the statute creates what might be described as a statutory joint tenancy which should be given effect without consideration of the strict common-law requirements mentioned in the cases. In the case before us we are particularly interested in the rights of the surviving depositor. Upon the death of the depositor who furnished the money, we cannot see any reason why the surviving joint tenant should not be held to be the owner of the deposit even though the donor may have intended to retain the beneficial interest in the account during his lifetime. It is true that such an arrangement is somewhat of a testamentary nature, but we see no reason why the statute of wills should prevail over equally valid statutes relating to deposits in banks and savings and loan institutions. As indicated in 21 Journal of the Missouri Bar 394, "ANOTHER VIEW OF JOINT BANK ACCOUNTS," by Charles B. Blackmar, the courts have approved a number of arrangements with testamentary purpose which transfer money and property without the use of a will. The statute is clear and needs no construction. It is our view that if the statute is complied with, in the absence of fraud, undue influence, mental incapacity, or mistake, the survivor will become the owner of the account. Depositors have a right to expect the statute to be enforced according to its plain language.

It should be noted that although *LaGarce* involved an account in a savings and loan association (§ 369.150) and the present account was in a bank or trust company (§ 362.470), the law pertaining thereto is applicable in each instance as the statutes "in all material respects . . . are the same." (487 S.W.2d at 499).

We do not believe that either argument of the executor, appellant, is meritorious. First, no case has been cited nor has our own research revealed any case limiting the dictates of § 362.470 to "new" deposits of new money. In fact, when an individual account is converted to one involving joint tenancy of two or more persons it would not be improper to say that by transfer a "new" deposit had been made to a "new" account. Either event would make the statute controlling. Second, the evidence does not establish conclusively that the deceased promoted an unacceptable testamentary disposition. The law in this connection may be found in that portion of the opinion in *LaGarce* heretofore quoted.

The basic question is—Was a joint tenancy created?

It is agreed that the relationship between a bank and its depositor is generally that of a debtor and creditor to be governed by that contractual relationship. The "contract" as expressed in the passbook and forms on the signature cards incorporates only the bank's "By-Laws, rules and regulations." There is no testimony or other evidence that initialing of an "OK" by an officer of the bank fell into either of the three categories. The record reflects that it was only a "policy" that the bank "usually" followed. In this case, the bank had constructive, if not actual, knowledge of the form in which the depositors desired the account to be held—as reflected on the signature cards in the bank's possession. The result would be no different if the necessity for an initialed "OK" by an officer was part

of the so-called contract. The general rule is that conduct by a party to a contract which increases the risk that a condition precedent thereto will not be satisfied, and which is beyond the reasonable expectations of the other party, is wrongful and excuses the condition. Signatures of all involved were on forms provided to create joint accounts in the possession of the bank. Failure of the bank to perform its function would be beyond the "reasonable expectations" of the other parties. The trial court correctly found that a joint tenancy account had been created by compliance with the statute.

The certainty created by *LaGarce* was conditioned upon the absence of "fraud" (among other things); and, the trial court in this case concluded that Bernice Hamilton fell within that exception. There is nothing in the record or in arguments submitted to this court which would suggest that the finding should have been otherwise.

The judgment of the trial court is affirmed.

All concur.