Kenneth R. SMITH,
Appellant-Respondent,

v.

AMERICAN BANK & TRUST CO.,
Appellant-Respondent,

v.

Richard Lee SMITH and Lola
Smith, Appellants.

No. WD 32722.

Missouri Court of Appeals,
Western District.

July 27, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Aug. 31, 1982.

As Modified Sept. 2, 1982.

Joseph R. Colantuono, Kansas City, for appellants.

John M. Edgar and Stephen J. Owens, Kansas City, for appellant-respondent American Bank & Trust Co.

Jack C. Terry and Paul R. Mudd, Kansas City, for appellant-respondent Kenneth R. Smith.

Before KENNEDY, P. J., and CLARK and MANFORD, JJ.

KENNEDY, Presiding Judge.

American Bank & Trust Company erroneously, as it is alleged, paid out $17,718.45, the balance in the account of their deceased depositor, Lee Roy Smith, to Richard, the decedent's son. Richard had formerly been a joint tenant with decedent on the account, but had been removed by the decedent, according to plaintiff's theory, and had been replaced by decedent's brother, Kenneth R. Smith, who is the plaintiff in the present case.

Kenneth brought suit against the bank to recover the $17,718.45, so paid out on Richard's order. After a jury trial, the jury awarded Kenneth judgment against the bank for the full amount of the account plus interest. The bank appeals from the judgment in Kenneth's favor.

The jury also awarded the bank judgment for a similar amount on its third-party claim against Richard and his mother, Lola, to whom it had mistakenly paid the proceeds of the account. Richard and his mother, Lola, appeal from the ensuing judgment.

Kenneth, although successful in his claim against the bank for the proceeds of the account, appeals from the final judgment, asserting error on the part of the court in rejecting his evidence of special damages and in refusing to submit to the jury his claim for punitive damages against the bank, growing out of its refusal to pay his checks drawn on the disputed account and returning the same for insufficiency of funds.

The facts will be more finely stated in connection with the appellants' points.

*Sufficiency of evidence to support verdict for Kenneth against bank.*

We first take up the sufficiency of the evidence to support the verdict in Kenneth's favor against the bank.

The checking account in question was opened by decedent, Lee Roy Smith, in February, 1974. In March it was made a joint account with decedent's son, Richard Lee Smith, as co-tenant.

On May 30, 1975, Lee Roy withdrew the balance in his checking account by his check payable to American Bank for $4,546.24. He noted the words "closing account" on the face of his check. In addition, his checkbook register showed the handwritten entry "change the account" as record of the transaction. The bank issued its cashier's check for the proceeds of the account.

On June 2 Lee Roy redeposited the exact amount he had withdrawn, probably represented by the cashier's check he had received. With the deposit, he submitted to American Bank a deposit slip from the back of his checkbook on which were preprinted his account number and name. At the same time he submitted a new signature card containing his signature and that of Kenneth R. Smith, the plaintiff here. The card showed that the account was joint. It bore the same account number as the closed account, namely, 73–858–1. The notation, "Reopen 6/2/75", appeared on the top of the card. The bank ledger cards, and the periodic statements furnished to Lee Roy, from this point forward showed the names of Lee Roy Smith and Kenneth R. Smith. Lee Roy evidently continued to use the same checkbook as before, when Richard Lee was the co-tenant of the account. Only Lee Roy's name was imprinted thereon; the name of the co-tenant did not appear.

Lee Roy died on December 11, 1977. The account had now grown to $17,718.45. Plaintiff Kenneth, accompanied by his wife and his daughter, immediately traveled from his Woodward, Oklahoma, home to Kansas City to claim Lee Roy's body. Upon their arrival, they went to Lee Roy's apartment where they found Lee Roy's bank statements and checkbook among his personal effects. They then went to American Bank to seek information concerning Lee Roy's account.

At the bank the three spoke with an officer, James Sparks. Sparks took note of the three signature cards in Lee Roy's file (the original individual card, the Lee Roy-Richard Lee card, and the Lee Roy-Kenneth card), but he advised Kenneth that Lee Roy had closed the joint account with Richard and reopened it in Lee Roy and Kenneth's name. He assured Kenneth, according to Kenneth's testimony, denied by Sparks, that the account proceeds were his alone and that he was the only person with signatory rights on the account. Sparks further advised Kenneth not to close the account for a few weeks to allow any outstanding checks to clear. Acting on Sparks' assurances, Kenneth did not withdraw the money from the account. Instead, he wrote several checks on the account. These included payment of Lee Roy's funeral expenses, previous debts incurred and gifts to Lee Roy's relatives.

After Lee Roy's funeral, which was held in Woodward, Oklahoma, Kenneth invited Lee Roy's three sons, Richard, Larry and Gary, and Lee Roy's former wife, Lola, to his home. Kenneth asked each of his nephews to indicate which of Lee Roy's personal effects he wanted. In addition, he offered each of them a check for $2,000 drawn on Lee Roy's account. Gary and Larry accepted the checks. Richard, however, declined the offer, claiming he did not want any of his father's money. During the visit Larry asked to see Lee Roy's checkbook. The next day Kenneth's wife noticed check No. 447 missing from the checkbook.

The day after the funeral, Richard, accompanied by his brothers and brother Larry's wife, traveled to Kansas City. He wrote check No. 447 (which Larry had apparently abstracted from the checkbook) to "Cash" in the amount of $17,718.45, withdrawing all funds from the account. The American Bank teller presented him with a cashier's check for $17,000, payable, at Richard's request, to his mother, Lola Smith. He received the remainder in cash. He gave the cashier's check to his brother Larry to deliver to Lola, along with all the cash except $250. He used the $250 to purchase an airline ticket to his Arizona home. Lola deposited the money she received in a joint savings account for herself and her three sons.

When the checks written by Kenneth were later presented for payment, American Bank returned them unpaid for insufficiency of funds. (Larry's and Gary's checks for $2,000 each were never presented for payment.) Kenneth and his wife called Sparks to inquire about the overdrafts. Sparks denied telling the couple that only Kenneth had authority to write checks on the account.

The present action was then commenced, with the outcome described at the beginning of the opinion.

American Bank claims that Lee Roy failed to follow customary bank procedure to remove a joint tenant from an American Bank account, hence that Richard remained a joint tenant at the time of Lee Roy's death. But the evidence reveals the only noncompliance with bank policy was the bank's failure to assign a new account number when Lee Roy redeposited the funds and submitted the new signature card signed by himself and Kenneth. Bank vice president and cashier Sparks explained that when a checking account at American Bank achieves a zero balance, the bank pulls the signature card from its active account file. If the depositor redeposits the money into the same account, the bank marks the signature card "reopened" and reactivates the account. Here the bank pulled the signature card containing Lee Roy and Richard's signature. However, it never indicated on the card that the account was reopened after Lee Roy redeposited his funds. In fact, American Bank noted that the account was reopened only on the card bearing the signatures of Lee Roy and Kenneth.

The monthly statements of the bank reveal that American Bank acknowledged Richard's termination as a joint tenant. Prior to May 30, 1975, the date Lee Roy withdrew the funds from his account, the statements bore the names of Lee Roy Smith and Richard Lee Smith. After that date, the statements bore the names of Lee Roy Smith and Kenneth R. Smith.

As the jury could have found, and did find, Lee Roy effectively removed Richard as a joint tenant, even though the new joint account with Kenneth bore the old account number. Lee Roy used the deposit slip with his old account number to redeposit his funds into a new joint account, unaware of the significance of the account number. Neither Lee Roy nor Kenneth had control over the assignment of account numbers. This was the province of the bank's new account officer. Although it failed to follow its customary procedure of assigning a new account number to a new account, American Bank's subsequent actions indicate the bank recognized Lee Roy and Kenneth as the only joint tenants on Account No. 73–858–1 after May 30, 1975. And, in view of the notations on the signature cards, the addressees on the monthly statements and the representations bank officer Sparks made to Kenneth, Lee Roy and Kenneth reasonably could rely on the fact that they were the only joint tenants on the account. Failure of American Bank to perform its function was beyond the reasonable expectations of Lee Roy and Kenneth. *In re Estate of Parker,* 536 S.W.2d 25, 30 (Mo. banc 1976). That American Bank did not follow its own procedure in assigning a new account number cannot be held against Kenneth.

The relationship between a bank and its depositor is generally that of a debtor and creditor to be governed by contract. *In re Estate of Parker,* supra at 29; *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 396 S.W.2d 570, 579 (Mo. banc 1965). Lee Roy's withdrawal of all the monies from his account on May 30, 1975, terminated American Bank's contractual obligations to Richard. The withdrawal closed the account. Lee Roy's redeposit and submission of a new signature card opened a new account. Lee Roy, as the original depositor, was empowered to transfer his funds to a new account so as to divest the interests of joint tenant Richard. *In re Estate of Hampton,* 547 S.W.2d 886, 888 (Mo.App.1977); *Carroll v. Hahn,* 498 S.W.2d 602, 607 (Mo.App.1973). By releasing the funds in Account No. 73–858–1 to Richard, American Bank breached its contract with Lee Roy and Kenneth. There was sufficient evidence for the jury to so find.[1]

---

1. The trial court gave the jury Instruction No. 7 which read:

 Your verdict must be for plaintiff if you believe:

 First, that on December 16, 1977 Richard Lee Smith was not authorized to write checks on the account, and,

 Second, that on that date defendant honored a check signed by Richard Lee Smith on the account, and,

As a sub-point to its argument the plaintiff did not make a submissible case against the bank, American says: "There was insufficient evidence to show that the deceased possessed the requisite intent to terminate the joint account because the trial court erred in overruling objections to the admission into evidence of the deceased's checkbook in that the checkbook constituted hearsay evidence and was irrelevant". We do not need to reach the issue whether the decedent's checkbook was admissible, as plaintiff insists, or whether, as the bank maintains, it was inadmissible because both hearsay and irrelevant. The trial court admitted it as a "business record". The checkbook and its entries were simply cumulative and corroborative of the bank's records and other evidence, and plaintiff would have made a submissible case without the decedent's checkbook. *McGee v. St. Francois Cty. S & L Ass'n,* 559 S.W.2d 184 (Mo. banc 1977). American complains of the admission of the checkbook only upon the ground that it was an essential link in plaintiff's prima facie case, without which plaintiff failed to make a submissible case, an argument we do not accept.

*Estoppel of bank to assert third-party claim against Richard and Lola.*

Richard and Lola claim that their evidence required the submission of their claim that the bank was *estopped* to claim repayment from them of the amount erroneously paid to them, and that the court erred in refusing their proffered instruction on the subject. This claim they base upon the fact of the bank's telling Richard he could withdraw the account and then its payment to him. From this premise Richard and Lola also claim that the court erred in giving Instruction 11,[2] patterned after MAI 30.01. Richard and Lola concede that MAI 30.01 may be used to submit a third-party claim if the issues in the third-party claim are identical to those in plaintiff's claim. *Kahn*

*v. Prahl,* 414 S.W.2d 269, 280 (Mo.1967). They argue, though, that it was not appropriate in this case since it did not hypothesize their affirmative estoppel defense, an issue not present in Kenneth's controversy with the bank.

 The point is denied. There is no evidence supporting their claim of estoppel, which would justify the submission. Estoppels are not favorites of the law and will not be invoked lightly. *John Hancock Mutual Life Insurance Co. v. Dawson,* 278 S.W.2d 57, 60 (Mo.App.1955).

 The party who asserts an estoppel bears the burden of establishing by clear and satisfactory evidence every fact essential to create an estoppel. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.,* 460 S.W.2d 651, 666 (Mo.1970); *Emery v. Brown Shoe Co.,* 287 S.W.2d 761, 767 (Mo. 1956); *Kind v. Staton,* 409 S.W.2d 253, 257 (Mo.App.1966). Among the essential elements of estoppel is that the party asserting it must, in some manner, suffer a legal detriment, change his position for the worse and be prejudiced. *Ryder v. Wescoat,* 535 S.W.2d 269, 271 (Mo.App.1976); *Martinelli v. Security Insurance Co. of New Haven,* 490 S.W.2d 427, 433 (Mo.App.1972).

The complaining parties have not established that the evidence supports an estoppel defense. It is not disputed that Richard received $17,718.45 from American Bank and that he gave most of this money to Lola who established a savings account. Neither party changed his position for the worse nor was either prejudiced because American Bank represented to Richard that he was a joint tenant on the account.

*Instructions; necessity of defining word "authorized".*

 The trial court submitted Instruction No. 7 to the jury. This instruc-

---

Third, because of such action defendant's contract obligations were not substantially performed, and

Fourth, plaintiff was thereby damaged.

**2.** Instruction 11 reads: "If your verdict is in favor of plaintiff and against defendant, then your verdict must also be for defendant-third party plaintiff against third party defendants for the same amount."

tion required the jury to find in Kenneth's favor against American Bank if the evidence established, *inter alia,* that "Richard Lee Smith was not authorized to write checks on the account...."[3] Richard and Lola charge that the trial court erred in failing to define the term "authorized". Although the trial court must define for the jury legal or technical terms included in its instructions, it need not explain the meaning of nontechnical, readily understandable terms. *Huff v. Union Electric Co.,* 598 S.W.2d 503, 510 (Mo.App.1980); *Koehler v. Burlington Northern, Inc.,* 573 S.W.2d 938, 944 (Mo.App.1978); *S. P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co., Inc.,* 525 S.W.2d 345, 350 (Mo.App.1975). Herein, the word "authorized", used in its conventional sense, required no further definition. The jury readily could discern its meaning from the context of the case. *Koehler v. Burlington Northern, Inc.,* supra at 944.

*Instructions; necessity of defining words "substantially performed".*

Instruction No. 7 required the jury to find that American Bank honored a check signed by Richard on the account and that "because of such action defendant's [American Bank] contract obligations were not substantially performed...." The instruction failed to define the term "substantially performed". Richard and Lola complain this omission was prejudicial error.

 Notes on Use, MAI 16.04, require that where the phrase "substantially performed" is used, it must be defined. MAI 16.04 provides its definition.[4] The MAI Notes on Use are authoritative and must be followed. Although any deviation is presumed to be prejudicial error, we still must inquire in each case whether the deviation is in fact prejudicial. *Sullens v. Roberts,* 624 S.W.2d 510, 512 (Mo.App.1981); *Salsberry v. Archibald Plumbing and Heating Co., Inc.,* 587 S.W.2d 907, 916 (Mo.App. 1979); *Duren v. Dougherty,* 585 S.W.2d 527, 529 (Mo.App.1979).

The meaning of "substantially performed" is in issue and the phrase requires definition primarily in the context of construction contract cases. *See, e.g., State ex rel. Stites v. Goodman,* 351 S.W.2d 763, 766 (Mo. banc 1961); *Yamnitz v. Polytech, Inc.,* 586 S.W.2d 76, 81 (Mo.App.1979); *Forsythe v. Starnes,* 554 S.W.2d 100, 108 (Mo.App. 1977); *Southwest Engineering Co. v. Reorganized School District R–9,* 434 S.W.2d 743, 751 (Mo.App.1968). In those cases it was crucial to give the jury a standard or guide by which to determine whether defects in a breaching party's performance were of sufficient substance and materiality to say that party substantially failed to perform the contract. *Forsythe v. Starnes,* supra at 108. In the instant case, however, there exists no issue concerning whether American Bank's failure to perform its contract was substantial or not. Rather, the issue is simply one of performance or nonperformance of a contract. Either Richard was authorized to write checks on the account or he was not. The trial court's inclusion of the word "substantially" herein merely constituted surplusage.[5]

 The record before this court clearly demonstrates that the giving of Instruction No. 7 without defining "substantially performed" did not mislead the jury, as claimed by the appellants. The instructions are to be considered as a whole and as being given and contemplated by jurors of reasonable intelligence. *McGowan v. Hoff-*

---

3. See n. 1, supra, for full text of Instruction No. 7.

4. "The phrase 'substantially performed' as used in this [these] instruction[s] means performance of all important parts of the contract with only slight variations." MAI 16.04.

5. Instruction No. 7 is a modified version of MAI 26.02. MAI 26.02 does not use the term "substantially". Rather, the sentence which corresponds to that in dispute here reads: "Second, because of such failure, defendant's contract obligations were not performed...." MAI 26.-02.

**176**

*man,* 609 S.W.2d 160, 164 (Mo.App.1980). The meaning of the word in the context of this case is well understood.

*Special damages, no offer of proof.*

Kenneth claims the court erred in rejecting his evidence of special damages. However, he made no offer of proof of such damages and we cannot review this allegation of error. *Moore v. Parks,* 458 S.W.2d 344, 348 (Mo.1970); *Stringer v. Reed,* 544 S.W.2d 69, 78 (Mo.App.1976).

*Punitive damages; no evidence justifying submission of same.*

Kenneth also challenges the trial court's refusal to instruct the jury on the issue of punitive damages. Kenneth's action against American Bank was one for breach of contract. Punitive damages ordinarily are not allowed for breach of contract. *Sands v. R. G. McKelvey Building Co.,* 571 S.W.2d 726, 733 (Mo.App.1978); *Dewey v. American Stair Glide Corp.,* 557 S.W.2d 643, 650 (Mo.App.1977); *Wallick v. First State Bank of Farmington,* 532 S.W.2d 520, 524 (Mo.App.1976). The exceptions to this rule occur where the breach amounts to an independent, willful tort and there are proper allegations of malice, wantonness or oppression. *Sands v. R. G. McKelvey Building Co.,* supra at 733; *Wallick v. First State Bank of Farmington,* supra at 524. The plaintiff bears the burden of proving punitive damages are warranted. *Stenson v. Laclede Gas Co.,* 553 S.W.2d 309, 315–316 (Mo.App.1977).

There is no evidence that American Bank acted wantonly or maliciously when it wrongfully paid out Kenneth's funds to Richard. We cannot say that American Bank was not negligent in making the wrongful payment to Richard. However, the negligence which supports awarding punitive damages is more flagrant in nature than that which supports awarding compensatory damages for ordinary negligence. The mere omission of the

duty to exercise care by American Bank does not cause us to hold also that Kenneth made a submissible case on the issue of punitive damages. *Stenson v. Laclede Gas Co.,* supra at 316.

The judgments are affirmed.

All concur.