**Erman L. CALL, Respondent,**

v.

**BANK OF GALLATIN, Appellant.**

**No. WD 36178.**

Missouri Court of Appeals,
Western District.

June 4, 1985.

Motion for Rehearing and/or Transfer
to Supreme Court Overruled
and Denied July 30, 1985.

Allan D. Seidel, Trenton, for appellant.

Jean E. Goldstein and Cullen Cline, Columbia, for respondent.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

KENNEDY, Judge.

The Bank of Gallatin appeals from a judgment awarding to Erman Call the sum of $6,485.07, an amount equal to the proceeds of a joint tenancy bank account to

which Erman claims to have been entitled upon the death of his father, Fred J. Call.

Judgment reversed.

Fred J. Call died May 20, 1981. He was one of two joint tenants of a bank account with defendant Bank of Gallatin. The other joint tenant at the time of Fred's death (as the Bank believed) was Harris Call, a son of the decedent, who survived him. The bank paid the proceeds of the account to Harris Call.

Erman Call brought this action against the bank, claiming that he was entitled to the proceeds of the account instead of his half-brother Harris. His claim is founded upon the following circumstances:

The account consisted wholly of monies of Fred J. Call; neither Harris nor Erman had ever made any contribution to the account and had never made any claim thereto during Fred's lifetime. It had once been in the joint names of Fred and Erman as joint tenants with right of survivorship. It had been opened in those names in 1970 or thereabout and had continued under that title until June 29, 1978. At that time Fred J. Call went into the bank, with Harris, and transferred the account to the joint names of himself and Harris. He was entitled to do this, for the terms under which the account was held authorized either signator (Fred or Erman, as it was then) to withdraw funds from the account.

The transfer of the account was done by the preparation of a "signature card", signed by both Fred and Harris, which also established the title to the account and constituted a contract among the two depositors and the bank. The account was plainly a joint tenancy account, payable to the survivor upon the death of either. Sec. 362.470, RSMo 1978. This transaction was effected with the aid of Barbara Stretch, who was a bank teller. The number of the account remained the same, and apparently there were no other changes made upon the bank records.

The bank continued at the end of each year to send a Form 1099, an Internal Revenue Service form showing the amount of interest paid by the bank to the depositor during the year. This Form 1099 showed the payees to be Fred and Erman. Presumably both names appeared on the mailing envelope. Fred and Erman happened both to have the same mailing address, to wit, Route 7, Columbia, Missouri. The 1980 and 1981 Forms 1099 were placed in Erman's mailbox. In June of 1982, which was almost a year after Fred's death, an auditor's inquiry was mailed to Fred and Erman and it too was placed in Erman's mailbox. The auditor's inquiry showed the amount of ther account to be zero.

An officer of the bank testified that the Forms 1099 and the auditor's report continued to show Fred and Erman as the owners of the account because the computer center had not been notified of the change. The computer which served the bank for this purpose was an off-premises computer located in St. Joseph.

I

Erman claims first that the execution of the new signature card on June 29, 1978, which purported to transfer title to the account from Fred and Erman as joint tenants to Fred and Harris as joint tenants, was not effective for that purpose. We do not agree with Erman on this point and we hold that the signature card of June 29, 1978, was effective to vest title to the account in Fred and Harris as joint tenants.

The procedure is the same as that employed by the depositor in *Smith v. American Bank & Trust Co.*, 639 S.W.2d 169 (Mo.App.1982), except that in *Smith* the proceeds of the account were actually paid to the withdrawing joint tenant in the form of a cashier's check, who then two days later redeposited the same in the same account in his own name and that of a different joint tenant.

We do not think the fact that in the case before us there was no withdrawal and redeposit of funds, as there was in *Smith*, deprived the transaction of its effectiveness to transfer title to the account. The substance of the transaction was the same

in the two cases. *See also Estate of Parker v. Burch*, 536 S.W.2d 25 (Mo. banc 1976), where the Supreme Court recognized the effectiveness of a similar procedure to transfer title to an account simply by the depositor's filing with the bank, and the bank's accepting it, a signature card like the one involved here.

## II

 Next, Erman claims that the bank is *estopped* to deny that he is entitled to the funds as surviving joint tenant. This argument he bases on the fact that the Forms 1099—two of which had been placed in his rural route mailbox—had continued after the title change described above, to carry Fred's name and his own. This, Erman says, led him to believe that he was still joint tenant with his father on the account. He says if he had not been thus misled he could have discussed the matter with his father and might have persuaded him to change the account from Harris's name as the other joint tenant back to his own name as the other joint tenant.

This fact situation does not set up any estoppel against the bank in Erman's favor. He cites us to no case where estoppel has been found on any comparable facts to this, but says, "general equitable principles should govern".

There is no definition which will cover all the facets of estoppel, but two elements are lacking here. One element that is lacking is a representation by the bank which it intended Erman to rely upon. *National Alfalfa Dehydrating & Milling Co. v. 4010 Washington, Inc.*, 434 S.W.2d 757, 764–65 (Mo.App.1968); 31 C.J.S. *Estoppel* § 67a(1) (1964). The Forms 1099 which came to Erman's mailbox, and which contained his and his father's names, were evidently intended for Fred and came to Erman's mailbox by mistake. He might never have seen them. Nowhere in the evidence can we find any clue that the bank intended Erman to rely upon this statement.

The second element that is lacking is a change of position by Erman, in reliance upon the bank's statement to his legal detriment. *Commerce Trust Co. v. Weed*, 318 S.W.2d 289, 303 (Mo.1958); *Midwestern Machinery Co. v. Parsons*, 385 S.W.2d 224, 227–28 (Mo.App.1964). Erman had no legal right to have his name remain on the account as joint tenant with his father. That he might have persuaded his father to remove Harris's name and to reinstate his own as joint tenant with his father is wholly speculative. He lost no valuable legal right. He suffered no legal detriment. He did not make a substantial change in his position to his detriment.

The claim of estoppel is not supported in any way by the evidence.

There is no substantial evidence to support the trial court's judgment and it must therefore be reversed.

Judgment reversed.

All concur.